LOZIER, *Superintendent of State Agency, Etc.,* v. ALEXANDER
DRUG CO.

No. 541.  Opinion Filed January 13, 1909.

(99 Pac. 808.)

1.    CONSTITUTIONAL LAW—Amendment of Constitution—Sub-
mission to Popular Vote—Uniting Two Distinct Propositions in
One.  Where a proposition, submitted to the people to amend the
Constitution, in fact contains two separate and distinct propo-
sitions—one for the amendment of the Constitution, and the other
for the approval or rejection of an act, or a certain portion
thereof, or the repeal of the same—the two propositions cannot
be united in the submission so as to have one expression of the
voter answer both propositions, as voters thereby might be in-
Vol. 23—1

duced to vote for both propositions who would not have done so if the questions had been submitted singly.

2.    **SAME—State Agency—Enforcing Act.** While a proposition to amend the prohibition article of the Constitution relating to the state agency, so as to extend it to towns within this state of 1,000 population or more, or one such agency at any other place within this state where the public necessity exists therefor, to be determined by the superintendent with the approval of the Governor, and a proposition for the approval or rejection or repeal of article 1 of the enforcing act (Laws 1907-08, p. 594, c. 69), may be submitted at the same election, the two cannot be united in one proposition, so as to have one expression of the voter answer both propositions.

(Syllabus by the Court.)

*Error from District Court, Logan County; A. H. Huston, Judge.*

Mandamus by the Alexander Drug Company to compel Robert E. Lozier, Superintendent of the State Agency for the sale of intoxicating liquor, to fill the drug company's orders for alcohol as an apothecary and pharmacist. Judgment for the drug company, and Lozier, as superintendent, brings error. Affirmed.

Section 30, art. 3, c. 69, p. 613, Sess. Laws 1907-08, is in *haec verba:*

"For the preservation of the public peace, health and safety, an emergency is hereby declared to exist, by reason whereof this act shall take effect from and after its passage and approval: Provided, however, that article 1 shall be referred by the Secretary of State, to the people for their approval or rejection at the regular election to be held in the year 1908, in the manner provided by law, and, if a majority of all the electors voting at said election shall vote in favor thereof, then said article shall thereby, upon the official canvass and publication of the vote thereon, become a part of the Constitution until otherwise provided by law. But if a majority of all the electors voting thereon at said election shall vote against said article 1, the same shall thereby, upon the official canvass and publication of the vote thereon, be repealed: Provided, however, that that part of section 5, article 1, of this act, which provides that 'An agency for the sale of intoxicating liquors for lawful purposes may be established by the superintendent, subject to the approval of the Governor, in any incorporated town, within this state, of one thousand population or more, or

at any other place in this state where a public necessity exists therefor,' shall not take effect, or be in force prior to December 1, 1908. In the event of such repeal, the money and property in the possession of the superintendent and the local agents shall be disposed of for the benefit of the state, as the Governor shall direct."

The only attempt made by the Secretary of State to refer said article 1, to the people for their approval or rejection, at the regular election held in the year 1908, was by submitting to the vote of the people at said election the following:

"State Question No. 1. Referendum proposed by the Legislature. Ballot Title. State question No. 1 is a proposed constitutional amendment and relates to the law now in force establishing a state agency and local agencies for the sale of intoxicating liquors for medicinal and scientific purposes only; each sale to be registered, no sale to be made, except upon prescription signed by a registered practicing physician; if adopted, will amend the Constitution so as to authorize the agency superintendent, with the approval of the Governor, to establish one such agency in each town of one thousand population, or wherever else a public necessity exists therefor. The law providing for the establishment of agencies for the sale of alcoholic liquors for medical and scientific purposes only—Shall it be adopted? Yes. No."

The result of the election upon said state question No. 1 was that it failed to receive a majority of all the votes cast at such election. A majority of those voting thereon, however, voted for the rejection of the same. The defendant in error, as plaintiff, instituted this action in the court below for a writ of mandamus against the plaintiff in error, as defendant, and the only question raised by the record is whether or not said article 1 was repealed. If not, the defendant in error is entitled to the relief prayed for, which was that the defendant, as superintendent of the state agency, be required to fill the plaintiff's orders as an apothecary and pharmacist for alcohol.

*Fred S. Caldwell*, for plaintiff in error.

*Henry E. Asp* and *Devereux & Hildreth*, for defendant in error.—

The repeal of article 1 (Laws 1907-08, p. 594, c. 69) was not

submitted to a vote of the people in the manner provided by the referendum law: Session Laws 1907-8, c. 44, § 10.

If the repeal of article 1 was submitted, then two distinct propositions were united in one, which is not permissible: *State ex rel. Bethany v. Allen,* 186 Mo. 673.

WILLIAMS, C. J. (after stating the facts as above). Four questions are raised in the argument of counsel in this case: (1) That an emergency law is not subject to the referendum provision of the Constitution; (2) that if an emergency law is subject to such provision, in this case, the same has not been submitted to the people under the referendum for their approval or rejection; (3) except as permitted by the initiative and referendum, the Legislature is the constitutional body to pass or repeal laws, and except as therein provided, such authority is neither reserved, nor can the same be delegated, to the people of the state by the Legislature, or any subdivision thereof, to determine when any law may go into effect or be repealed; (4) whether or not the Legislature may enact a law and declare an emergency, and at the same time submit the same for the approval or rejection of the people, to stand repealed in the event a majority of the votes cast thereon is adverse thereto; and could such be done in one enactment, or would two enactments or measures be required?

In view of the conclusions hereinafter reached it is only essential to pass upon one question raised; that is, whether or not article 1 was referred to the people at the general election in 1908 for their approval or rejection. The ballot is referred to as "referendum proposed by the Legislature," as a proposed constitutional amendment relating "to the law now in force establishing a state agency and local agencies for the sale of intoxicating liquors for medicinal and scientific purposes only; each sale to be registered, no sale to be made except upon the certificate signed by a regular practicing physician; if adopted, will amend the Constitution, so as to authorize the agency superintendent, with the approval of the Governor, to establish one such agency in each town of one thousand population, or wherever else a public neces-

sity exists therefor. The law providing for the establishment of agencies for the sale of alcoholic liquors, for medical and scientific purposes only—Shall it be adopted?" Section 7, art. 1, c. 44, p. 445, Initiative and Referendum, Sess. Laws 1907-08, provides that when any measure shall be filed with the Secretary of State, to be referred to the people of the state, or of any county or district composed of one or more counties, either by the Legislature, or by the referendum petition, the Secretary of State shall forthwith transmit to the Attorney General of the state a copy thereof, and within 10 days the Attorney General shall devise and return to the Secretary of State, a ballot title for said measure, such ballot title to be printed on the official ballot, and to give a true and impartial statement of the purpose of the measure.

There is nothing shown by the ballot title that if a majority of all electors voting at said election should vote against said article, the same should thereby, upon the official canvass and publication of the vote thereon, be repealed. No opportunity was given the elector separately to express his will by his vote upon the question of the adoption or rejection of said provision as proposed to become a part of the Constitution, nor to express such will as to whether or not said article 1 should be repealed. He might have been opposed to incorporating such amendment in the Constitution authorizing the establishment of an agency in towns of 1,000 population, or of less population, where it was determined that a public necessity existed therefor, and still have been in favor of the dispensary system, as provided for by the prohibition article of the Constitution (Bunn's Ed. § 499; Snyder's Ed, pp. 394, 395). In such event he had no opportunity to express his will, and courts cannot presume from information *aliunde* than that furnished by the ballot title, supplied to the voter, that he understood that a vote against the proposed amendment to the Constitution should operate as a vote in favor of the repeal of article 1, or that persons being in favor of the proposed amendment to the Constitution would also favor the retention of article 1, and *vice versa*. The elector may have desired that the law should re-

main in force when limited, as provided in the prohibition article of the Constitution, but may have been unwilling to extend its provisions to towns of 1,000 population, or wherever the superintendent, with the approval of the Governor, should determine that a public necessity exists therefor.

It appears that under the ballot title, as it was attempted to refer the matter to the people, two distinct and antagonistic questions were submitted on one ballot, which permitted only one vote, which was to be either in favor of or against both questions, and whatever the desire or will of the voter might have been, he could vote only the one way on both propositions. In the case of *State ex rel. City of Bethany v. Allen, State Auditor,* 186 Mo. 674, 85 S. W. 531, Mr. Chief Justice Brace, in delivering the opinion of the court, said:

"The proposition voted on at said election was for said city to become indebted in the sum of $12,000 in excess of its annual revenue, for the following purposes, to wit: Forty-five hundred dollars to be used for the purpose of purchasing a site, and the erection and construction of a public building thereon, or the purchase of a site and building to be used for a city hall, city prison, and hose house, and for furnishing the same, and the further sum of $7,500 to be used in making repairs and improvements in waterworks and electric light plant, and extension of water mains and electric lines belonging to said city. All this was submitted as a single proposition on which the voters were required to vote by ballots in the following form: 'For increase of debt—Yes; for increase of debt—No.' That this submission contained at least two separate and distinct propositions, one for an increase of municipal indebtedness to a certain amount, for one purpose, and another for an increase of municipal indebtedness to another and different amount, for another and different purpose, is beyond question, and it being manifest that such a submission was in the teeth of the well-recognized principle of law 'that two propositions cannot be united in the submission so as to have one expression of the vote answer both propositions, as voters thereby might be induced to vote for both propositions who would not have done so if the questions had been submitted singly.'"

In the case of *McBryde v. Montesano*, 7 Wash. 72, 34 Pac. 559, the court said:

"By ordinance 178, the council ordered the submission of a proposition to borrow $25,000 upon time bonds, under the act of March 7, 1891 (Acts 1891, p. 261, c. 128). The purpose for which this money was to be borrowed was set forth in the ordinance as (1) to pay outstanding indebtedness, $20,000; (2) for the purchase of fire apparatus $1,500; (3) for the purchase of a lot of land and the erection of a city hall and jail thereon, $3,-500. But one ballot was used, 'Bonds, Yes,' and 'Bonds, No'; and appellant contends that this was irregular, inasmuch as there were two propositions involved, viz., a proposition to fund $20,-000 of old debts, and a proposition to borrow $5,000 for future purposes. We agree with him in this, notwithstanding the argument of the respondent that the statute is broad in its permission to borrow money for municipal purposes, and that the acquisition of money to pay debts is a strictly municipal purpose. The act in question looks entirely to the future needs of cities, and leaves to other statutes in existence the matter of providing for old debts by funding. The act under which Montesano is authorized to fund her debt is the same one under which she voted to validate the electric light debt (section 4, Act Feb. 26, 1890 [Laws 1889-90, p. 33, c. 2]); and it will be found that whenever the city council sees fit to fund any of her lawful indebtedness, it can do so without any popular vote at all. It is probable that the city authorities were in this instance misled by the act of March 7, 1891 (Acts 1891, c. 132, p. 269), where a permission is granted to cities to submit propositions to fund at the same election with propositions to ratify void indebtedness. But this last act does not make it necessary thus to submit, and does not interfere with the act of 1890. Yet it was proper enough to submit a proposition to fund at the election which was held, but it could not be united with the proposition to borrow money for further purposes so as to have one expression of the voter answer both propositions. They might be decided by the same ballot, but the voter must have had an opportunity to express himself separately as to each one. For these reasons the whole election under Ordinance No. 178 was void."

It may be urged that the electors of this state understood that they were voting to repeal article 1 of the enforcing act,

and that the Governor by his proclamation declared that it was repealed. But if the question had not been legally submitted to the people, so that they could directly vote upon the question of repealing, there was nothing to declare the result of, and a proclamation thereon would be a nullity. Courts are not created for the purpose of enacting or repealing laws, but solely for the purpose of construing; interpreting, and determining the validity of the same. As to whether or not the electors, in voting on this proposition, understood that they were voting to repeal said article 1, and it was the intention of a majority of the electors of the state to so declare, this does not appear before this court in any way provided by law; but, if it appears *aliunde,* the same cannot be considered by this court for any purpose. Such facts and arguments should be addressed to the Legislature of the state, and not to the courts.

In view of the fact that the proposition known as "State Question No. 1" neither received a majority of the votes cast at said election, nor a majority cast on such question, it is not necessary to determine whether or not it attempts to submit the two questions, to wit: (1) The amendment of the prohibition article of the Constitution relating to the state agency, so as to extend its provisions to towns having a population of 1,000 or more, or to any place in the state having a less population, where the superintendent with the concurrence of the Governor, shall determine that a public necessity exists for the establishment of one such agency in such place; (2) the repeal of article 1 of the enforcing act. Had both of said propositions been submitted as one proposition, so that a person would have had to vote in favor of one in order to register his approval of the other, it would have operated to have rendered void the election as to both propositions.

The Judgment of the lower court is affirmed.

All the Justices concur.