**WILLIAMS v. CITY OF NORMAN et al.**

No. 12143—Opinion Filed Sept. 27, 1921.

Rehearing Denied March 21, 1922.

(Syllabus.)

1. **Constitutional Law—Self-Executing Provisions—Incurring Indebtedness for Public Utilities for City.**

Section 27, art. 10, of the Constitution is a self-executing grant of power to the qualified property taxpaying voters of a city or town voting at an election held for that purpose, by a majority vote, to become indebted in a larger amount than that specified in sections 9 and 26, art. 10, of the Constitution, for the purpose of purchasing or constructing public utilities, or for repairing the same, to be owned exclusively by such city.

2. **Municipal Corporations—"Public Utilities"—Light Plant.**

Electric light plants are "public utilities" within the meaning of the term as used in section 27, art. 10, of the Constitution.

3. **Constitutional Law — Self-Executing Provisions—Power of Legislature to Abridge or Extend—Grant of Power to Cities.**

The Legislature of this state has no power to abridge or extend, by construction or otherwise, a provision of the Constitution of this state which is a self-executing grant of power to the qualified property tax-paying voters of a city or town, where such a constitutional provision is complete in itself.

4. **Same—Incurring Indebtedness for Public Utilities for City.**

Section 27, art. 10, of the Constitution of this state is a grant of power to the people of the municipalities of this state named therein, is complete in itself, and needs no further legislation to put it in force.

5. **Same—Invalidity of Statute Abridging Constitution.**

That part of section 1, c. 169, of Session Laws 1913, providing that "before any indebtedness under the provision of section 27, art 10, of the Constitution shall hereafter be incurred by such city or town, it shall be necessary that the same shall have received more than fifty per centum of all such qualified property tax-paying voters of

such city or town," is invalid, because it is in conflict with section 1, art 4, of the Constitution, in that it is an attempt to exercise power not warranted by said section 1, art. 4, of the Constitution.

### 6. Constitutional Law — Construction—Defeat of Object.

The construction of a constitutional provision must not be so strict or technical as to defeat the evident object and purpose of its adoption.

### 7. Municipal Corporations—Bond Election for Pu lic Utility—Constitutional Provision—Construction.

That part of section 27, art. 10, of the Constitution providing that "any incorporated city or town in this state, may by a majority of the qualified property tax-paying voters of such' city or town, voting at an election held for that purpose," means a majority of such voters voting, in contradistinction' to "a majority of such voters in such city or town'."

### 8. Same—Injunction to Test Validity of Bonds—Judgment Affirmed.

Record examined, and held, that the judgment of the trial court should be affirmed.

Error from District Court, Cleveland County; W. L. Eagleton, Judge.

Injunction by Ben F. Williams against the City of Norman and others to invalidate municipal bonds. Judgment for defendants, and plaintiff brings error. Affirmed.

Ben F. Williams, Rainey & Flynn, and Paul Reiss, for plaintiff in error.

John E. Luttrell and J. B. Dudley, for defendants in error.

JOHNSON, J. This action was commenced in the district court of Cleveland county by the plaintiff, Ben F. Williams, against the defendants, city of Norman, J. W. Harbour, R. W. Hutto, M. C. Runyan, Joe Vincent, Key Boyd, W. B. Gater, Minnie Herring. and Nola Helms, for the purpose of securing from the said district court an injunction against the defendants and each of them, enjoining and restraining them from selling or disposing of certain bonds purporting to have been authorized by the qualified tax-paying voters of the city of Norman at an election on January 2, 1920, in said city. The relief asked by plaintiff was that said bonds be declared illegal and void of any effect whatsoever, and that defendant officers of said city be ordered, directed, and required to cancel said bonds and to make proper entry upon the records of said city pursuant to the injunction prayed for, and for all other proper relief.

The defendants in due time filed their answer, and thereafter the cause was submitted to the court upon an agreed statement of facts, whereupon judgment was rendered by the court denying plaintiff the relief sought and awarding judgment against him for costs.

The agreed statement of facts is as follows:

"(1) It is agreed that the plaintiff, Ben F. Williams, is a resident and taxpayer of the city of Norman, Oklahoma.

"(2) That the defendant city of Norman, Oklahoma, is a municipal corporation, and a city of the first class, organized and operating under the Constitution and the laws of the state of Oklahoma, having a charter form of government, which charter was adopted and approved by the qualified voters of said city by the Governor of the state of Oklahoma; and that subsequent to the adoption of such charter and its approval by the Governor, copies of such charter, certified by the chief executive officer and authenticated by the seal of said city, setting forth submission of such charter to the electors and its ratification by them, were made in duplicate and deposited, one in the office of the Secretary of State, and the other, after being recorded in the office of the county clerk of Cleveland county, Oklahoma, deposited in the archives of the city of Norman; and that such copies and duplicates were so deposited after the second day of January, 1920.

"(3) That defendants Harbour, Hutto, Runyan, Vincent, Boyd, Gater, Herring and Helms, were at the time of said election, to wit, the second day of January, 1920, the acting city officials as alleged in plaintiff's petition.

"(4) That on the second day of January, 1920, the said city, through its acting officers, held an election for the purpose of voting and issuing municipal bonds of said city in the sum of $125,000.00 for the purchasing or constructing a public utility, to wit, an electric light and power plant to be owned exclusively by said city.

"(5) That at said election there were 441 votes cast, 225 being cast in favor of the issuance of said bonds, and 215 votes being cast in opposition to the issuance of said bonds, and one ballot mutilated; that at the said election all duly qualified property tax-paying voters of said city of Norman who offered to do so were permitted to vote, and no others.

"(6) That at the time of said election, to wit, January second, 1920, the total valuation of the property in the city of Norman for taxation purposes was $2,891,000.00 and the total bonded indebtedness of said city at that time was $278,600.00 and upon $27,000.00 of this total indebtedness there had been issued bonds drawing 5 per cent.

interest per annum, and upon $251,600.00 of this indebtedness there had been issued bonds drawing 6 per cent. interest per annum.

"(7) That at the time of said election the voters who cast 225 votes in favor of the issuance of said bonds were not a majority of all the qualified property tax-paying voters residing in such city or town and qualified to vote at such election, but were a majority of the qualified property tax-paying voters of such city who voted at said election.

"(8) That at the time of holding said election the bonded indebtedness then existing against the city was the full amount authorized under section 26, art. 10, of the Constitution, and an amount so as to require an annual levy of more than ten mills for the purpose of paying the interest on said bonded indebtedness and of creating a sinking fund to pay such bonded indebtedness when due.

"(9) That at the time of holding such election, the bonded indebtedness of said city was in excess of 5 per cent. of the valuation of the taxable property therein as ascertained from the last assessment for state and county purposes.

"(10) That unless restrained and enjoined by the court, the defendant city of Norman will sell and dispose of said bonds and use the proceeds for the purpose for which they were voted."

The trial court made no separate findings of fact and conclusions of law, but made a general finding, which is recited in the journal entry, that the court finds the issues in favor of the defendants and against the plaintiff, and that plaintiff is not entitled to an injunction as prayed in his amended petition, to which finding and conclusion the plaintiff made his exceptions, which were allowed.

The plaintiff's assignments of error are:

"(1) Said court erred in overruling the motion of plaintiff in error for a new trial.

"(2) The judgment of the trial court in denying his prayer for injunction is contrary to law.

"(3) The judgment of the trial court is contrary to the evidence.

"(4) The judgment of the court is contrary to both the law and the evidence.

"(5) The judgment of the trial court in denying the application for injunction is clearly against the weight of the evidence as same appears from the agreed statement of facts filed herein.

"(6) The court erred in not rendering judgment for plaintiff and granting prayer for injunction upon the facts as they appear from the agreed statements of facts filed herein.

"(7) The court erred in rendering judgment against plaintiff and in favor of defendants."

Concerning which counsel for plaintiff say in their brief:

"The above assignments of error all relate to two general propositions of law, and we will therefore not discuss them separately, but the same will be covered by our presentation of the following propositions of law:

"1st. The purported bond issue is invalid for the reason that the number of votes cast in favor of the issuance of said bonds was not a majority of the qualified property tax-paying voters of the city of Norman, as required by article 10, section 27, of the Constitution and chapter 169 of the Session Laws of 1913.

"2nd. The purported bond issue is invalid for the reason that it creates an indebtedness in excess of the limitation upon incorporated cities and towns, by section 9, article 10, of the Constitution, and section 26, article 10, of the Constitution, without having received the requisite three-fifths (3/5) of the votes of said city of Norman."

Answering these propositions, counsel for defendants argue two propositions, which are as follows:

"(1) Section 27, art. 10, of the Constitution is self-executing, unambiguous, and means a majority vote of the qualified property tax-paying voters participating in the election, and not a majority of all the qualified property tax-paying electors residing in the city.

"(2.) Section 27, art. 10, of the Constitution is a grant of power to the people of a city or town to issue bonds for a public utility, in excess of and independent of sections 9 and 26 of said article."

Two material points are not controverted in the record. to wit: (1) An electric light plant to be owned exclusively by the city constitutes a public utility within the meaning of section 27 of article 10 of the Constitution. (2) That such provision of the Constitution is self-executing.

We will consider these propositions and counter propositions together.

Section 27, art. 10, of the Constitution is as follows:

"Any incorporated city or town in this state may by a majority of the qualified property taxpaying voters of such city or town, voting at an election to be held for that purpose, be allowed to become indebted in a larger amount than that specified in

section twenty-six, for the purpose of purchasing or constructing public utilities, or for repairing the same, to be owned exclusively by such city; provided, that any such city or town incurring any such indebtedness requiring the assent of the voters as aforesaid, shall have the power to provide for, and, before or at the time of incurring such indebtedness, shall provide for the collection of an annual tax in addition to the other taxes provided for by this Constitution, sufficient to pay the interest on such indebtedness as it falls due, and also to constitute a sinking fund for the payment of the principal thereof within twenty-five years from the time of contracting the same."

In the case of State ex rel. Edward v. Millar, Mayor, 21 Okla. 448, 96 Pac. 747, wherein the municipality and its officers were parties defendant, whose actions in issuing bonds for the purpose of erecting a public utility were under review in this court, Mr. Justice Kane, in a very exhaustive opinion, considered the section of the Constitution, supra, which opinion was filed June 23, 1908, and has been adhered to by this court ever since, and especially in City of Ardmore et al. v. State ex rel. Best, 24 Okla. 862, 104 Pac. 913; Coleman v. Frame, County Clerk, et al., 26 Okla. 193, 109 Pac. 928; Dunagan et al. v. Town of Red Rock et al., 58 Okla. 218, 158 Pac. 1170.

In the first case mentioned, supra, it was held in the syllabus as follows:

(3)   "The term 'for the construction of waterworks to said city, to be owned and operated by said city,' printed on the ballots used at an election held for the purpose of submitting to the qualified electors of a municipality the question of incurring indebtedness for the construction of public utilities under section 27, art. 10, of the Constitution, is sufficiently comprehensive to include such work as re-equipping and making extensions to an existing waterworks system.

(4)   "The construction of a constitutional provision must not be so strict or technical as to defeat the evident object and purpose of its adoption.

(5)   "City ordinances providing that a continuing annual tax sufficient to pay the interest when the same shall fall due, and for the purpose of providing a sinking fund with which to pay the principal of said bonds, shall be levied upon all the taxable property within said city, substantially comply with the requirements of section 27, art. 10, of the Constitution, in respect to providing funds for paying the interest and principal on bonds issued for the purpose of constructing public utilities.

(6)   "Section 27, art. 10, of the Constitution, is a self-executing grant of power to the qualified property taxpaying voters of a city or town voting at an election held for that purpose, by a majority vote, to become indebted in a larger amount than that specified in section 26, art. 10, of the Constitution, for the purpose of purchasing or constructing public utilities, or for repairing the same to be owned exclusively by such city.

(7)   "Sewers are 'public utilities' within the meaning of the term as used in section 27. art. 10, of the Constitution.

(8)   "That part of section 27, Art. 10, of the Constitution, which provides that a sinking fund shall be created sufficient to pay the principal in 25 years, of bonds issued to purchase, construct, or repair public utilities, clearly contemplates that such bonds shall run for a period of 25 years."

In the body of the opinion, beginning on page 459, it is said:

"The evident object and purpose of section 27, supra, is primarily to empower the incorporated cities and towns of this state by a majority of the qualified taxpaying voters voting at an election held for such purpose, to become indebted in a larger amount than that specified in section 26, for the purpose of purchasing or constructing public utilities or for repairing the same, to be owned exclusively by such municipalities, and it is the duty of the court, if possible, to so construe the provision as to carry out its purpose. The construction of a constitutional provision must not be so strict or technical as to defeat the evident object and purpose of its adoption.

"The secondary object and purpose of the provision is to provide an annual tax sufficient to pay the interest on the bonds each year and to provide a sinking fund for the payment of the principal within 25 years. We are convinced that the ordinances providing that a continuing annual tax sufficient to pay the interest when the same shall fall due, and for the purpose of providing a sinking fund with which to pay the principal of said bonds, shall be levied upon all the taxable property within said city, substantially comply with the requirements of section 27, art. 10, of the Constitution, in respect to providing funds for paying the interest and principal on bonds issued for the purpose of constructing public utilities.

"Fourth.   By the eighth paragraph of defendants' return to the alternative writ they contend that section 27, art. 10, of the Constitution, furnished no authority for the issuance of bonds by an incorporated city or town, and is not a self-executing or self-operating grant of power to any incorporated city or town, upon a majority vote of the qualified property taxpaying voters thereof voting at an election, to become indebted for the purpose of constructing public utilities or for repairing the same, to be owned exclusively by such city or town,

but that said section 27 constitutes merely a limited grant of power to the Legislature of the state to allow or authorize such municipal corporations to incur an indebtedness for the purpose of and subject to the restriction and requirements in said section mentioned and prescribed. * * *

"Mr. Chief Justice Williams, in Ex parte Wagner, ante, p. 33, 95 Pac. 435, in discussing the rule to be applied in determining whether a certain section of the Oklahoma Constitution was self-executing, quotes with approval from Taylor v. Hutchinson et al., 145 Ala. 207, 40 South. 109, as follows: 'Our Constitution contains many instances of non-self-executing provisions. In these cases there is always some indication that something is left for the Legislature to do, or there is something in the nature of the provision that renders such legislation necessary.'

"Another excellent general statement of when a constitutional provision is self-executing may be found in the opinion of Mr. Justice Brown, in the case of Davis v. Burke, 179 U. S. 399, 21 Sup. Ct. 210, 45 L. Ed. 249: 'Where a constitutional provision is complete in itself it needs no further legislation to put it in force. When it lays down certain general principles, as to enact laws upon a certain subject, or for the incorporation of cities of certain population or for uniform laws upon the subject of taxation, it may need more specific legislation to make it operative. In other words, it is self-executing only so far as it is susceptible of execution. But where a Constitution asserts a certain right, or lays down a certain principle of law or procedure, it speaks for the entire people as their supreme law, and is full authority for all that is done in pursuance of its provision. In short, if complete in itself, it executes itself.'

"Applying the above rules to the case at bar, we are irresistibly led to the conclusion that section 27, art. 10, supra, is a grant of power to the people of the municipalities of the state, and not a limitation upon the Legislature. Some further reasons for reaching this conclusion may be drawn from other provisions of the Constitution. Section 1 of article 2 provides that: 'All political power is inherent in the people; and government is instituted for their protection, security, and benefit, and to promote their general welfare.' Probably no Constitution was ever drafted that refers to the people so much power to be exercised by direct vote. Municipal corporations are given the right by direct vote of the people to form their own municipal charters. This general underlying idea that the people themselves have the power by direct vote to control their own affairs argues pursuasively that it was the intention of the Constitution to give to municipal corporations directly the right to become indebted by vote of the taxpayers for the construction of public utilities.

"It may be conceded that section 26 of article 10 is a limitation upon the power of the Legislature; there the expression is: 'No county, city, town,' etc., 'shall be allowed to become indebted, in any manner, for any purpose, to an amount exceeding, in any year, the income and revenue provided for such years' etc. This could not be held to mean that any municipality should be allowed to become indebted in any manner, and for any purpose, by the assent of three-fifths of the voters thereof. But section 27 is a positive instead of a negative provision. The statement here is, 'Any incorporated city or town in this state may, by a majority of the qualified property taxpaying voters of such city or town, voting at an election to be held for that purpose, be allowed to become indebted in a larger amount than that specified in section twenty-six for the purpose of purchasing or constructing public utilities, or for repairing the same, to be owned exclusively by such city.' It is true the expression, 'be allowed to become indebted,' is used, but the section itself furnished the answer to the question, how allowed? which is, 'by a majority of the qualified property taxpaying voters of such city or town' voting at an election to be held for that purpose.' Not that the city may be allowed by the Legislature to become indebted, but by a majority of the taxpaying voters.

"Section 41 of article 5 of the Constitution furnished an illustration of the language employed by the framers of the Constitution when they wished merely to give the Legislature power to permit cities to do certain things. It provides 'the Legislature may enact laws authorizing cities to pension meritorious and disabled firemen.' Here it was perfectly plain that it was not intended to grant this power directly to cities; the presumption is that when, as in section 27 of article 10, the framers of the Constitution used different language, they intended a different meaning. If they had intended merely to provide that the Legislature may allow incorporated cities by a majority of the votes to become indebted for the purpose of constructing public utilities, they would doubtless have said so.

"Fifth. The defendants further allege in their return that the sewer bonds are invalid because sewers are not public utilities within the meaning of section 27, art. 10, supra. That the amount of the proposed waterworks bonds, to wit, $45,000, is in excess of the income and revenue provided by said city for the year 1908, and therefore said city cannot incur said waterworks indebtedness without the assent of three-fifths of all the voters of said city voting at an election held for that purpose.

"There is a dearth of authority on what it takes to constitute a public utility. It is held in Valley City Salt Co. v. Brown, 7 W. Va. 101, that the expression 'public utility' is synonymous with 'public use.'

"In Aldridge v. Tuscumbia, C. & D. R. R. Co., 2 Stew. & P. (Ala.) 199, 23 Am. Dec. 307, Mr. Chief Justice Lipscomb says: 'Whatever is beneficially employed for the community is of public use.'

"In Olmstead v. Camp, 33 Conn. 532, 89 Am. Dec. 221, Mr. Justice McCurdy, speaking for the court, says: 'One of the most common meanings of the word 'use' as defind by Webster, is 'usefulness, utility, advantage, productive of benefit.' 'Public use' may therefore well mean public usefulness, utility, or advantage, or what is productive of general benefit.'

"There is probably nothing more conducive to the health, comfort, and convenience of the inhabitants of a city or town than a good system of sewerage. Sewers are always incident to a well ordered city or town, and certainly must be included within the term 'public utilities' as used in secton 27, supra. And sewers, too, more than any other public utility, are owned exclusively by cities. It frequently happens, indeed, it is the rule, that waterworks systems are owned and operated by private individuals or corporations, but sewers, so far as we are aware, are always owned and operated by municipalities. To our mind there can be no doubt that the Constitutional Convention, when it drafted the Constitution, and the people when they adopted it, intended to provide for the purchase, construction, and repair of sewers, when they allowed any incorporated city or town in the state, by a majority of the qualified property taxpaying voters of such city or town at an election held for that purpose, to become indebted in a larger amount than that specified in section 26 for the purpose of purchasing and constructing public utilities and repairing the same, to be owned exclusively by such city. * * *

"Section 27, art. 10, provides that all municipalities may become indebted for a larger amount than that specified in section 26 upon a majority of the qualified property taxpaying voters of such city or town voting to do so at an election to be held for that purpose. The election here was held under this section of the Constitution, and it was entirely in conformity with its provisions to allow only qualified property taxpaying voters of said city to vote, notwithstanding article 9, c. 8, p. 115, Sess. Laws Okla. 1905, which purports to give all qualified electors the right to vote, and notwithstanding, that part of section 29, art. 3, c. 12, Wilson's Rev. & Ann. St. 1903, which provides that all the taxpayers of the city are entitled to vote at such elections."

The record in the instant case discloses that on the 13th day of January, 1920, there was passed and approved by the city an ordinance in conformity with section 27, art. 10, of the Constitution, for the purpose of providing the necessary funds to pay the interest on said bonds when due and also to constitute and maintain a sinking fund sufficient to discharge the principal thereof at maturity to be levied upon all the taxable property in said city in addition to all other taxes.

From the authorities cited, supra, it seems clear to us that the defendants in error's second counter proposition, that "section 27, art. 10, of the Constitution, is a grant of power to the people of a city to issue bonds for a public utility in excess of and independent of sections 9 and 26 of said article," must be sustained.

We will next consider the latter part of the defendants in error's first proposition, that said section 27, art. 10, "means a majority vote of the qualified property taxpaying voters participating in an election, and not a majority of all the qualified property tax-paying electors residing in the city": the plaintiff in error's first proposition being "that the purported bond issue is invalid for the reason that the number of votes cast in favor thereof was not a majority of the qualified property taxpaying voters of the city of Norman as required by article 10, section 27, of the Constitution, and chapter 169 of the Session Laws of 1913."

The precise question thus raised has never been decided by this court in expressed terms, but we know of no decision of this court, and none such has been cited by counsel, where the question was raised; but in the opinion cited, supra, the provision of the Constitution has been quoted and upheld by this court.

The language of section 27, art. 10, of the Constitution, under consideration is, "by a majority of the qualified property taxpaying voters of such city or town, voting at an election to be held for that purpose. The applicable part of section 1, c. 169, Sess. Laws 1913, reads as follows:

"And before any indebtedness under the provision of section 27, art. 10, of the Constitution shall hereafter be incurred by such city or town, it shall be necessary that the same shall have received more than fifty per centum of such qualified property taxpaying voters of such city or town."

The agreed statement of facts is that at the bond election held on January 2, 1920,

none but property taxpaying voters of the city of Norman voted, and that a majority of such voters voting at such election voted for the bonds, but that such affirmative votes did not constitute a majority of such voters of the city as expressly provided in the Session Laws, supra; it being the contention of the plaintiff in error that the bonds were therefore invalid for the specific reasons: (1) That section 27, art. 10, of the Constitution means that the bonds should have received a majority of all the qualified voters of the city; and (2) that the section of the Session Laws is valid, and provides that before the bonds could be valid they must have received more than 50 per centum of all the qualified taxpaying voters of the city.

We will first consider the validity of the section of Session Laws 1913 involved.

It is contended by defendants in error that the same is invalid because: (1) That it is an attempt to modify, abridge, and construe section 27, art. 10, of the Constitution, and violates section 1, art. 4, of the Constitution; and (2) that it violates section 57, art. 5, of the Constitution, in that the same is not included within the title of the act. Both these provisions of the Constitution were construed by this court in the case of In re County Comm'rs of Counties Comprising 7th Judicial District, 22 Okla. 436, 98 Pac. 557, in a very exhaustive opinion by Williams, C. J.

Section 1, art. 4, of the Constitution provides that:

"The powers of the government of the state of Oklahoma shall be divided into three separate departments: The legislative, executive, and judicial; and except as provided in this Constitution, the legislative, executive and judicial departments of government shall be separate and distinct, and neither shall exercise the powers properly belonging to either of the others."

This, or a provision of similar import, is in our federal Constitution and the Constitutions of all the states in the Union, and decisions construing the same are numerous and all to the same effect; that is, that no one of the several co-ordinate branches of government is permitted, in the discharge of its functions, to encroach upon the others, but they must be kept separate and distinct. The Legislature has the power to make or amend legislative acts, and repeal former acts of the Legislature. The judicial department is clothed with the power of construing legislative acts, and had no power to legislate. The Legislature of this state has no power to abridge or extend a provision of the Constitution when the same is self-executing, by so-called construction or otherwise.

In the case, supra, Chief Justice Williams quotes with approval the case of Smith v. Strother, 68 Cal. 194, 8 Pac. 853, wherein it was said in part as follows:

"What constitutes the distinction between a legislative and judicial act? The former establishes a rule regulating and governing in matters or transactions occurring after its passage. The other determines rights or obligations of any kind, whether in regard to persons or property, concerning matters or transactions which already exist and have transpired ere the judicial power is invoked to pass on them. As said by Woodbury, J., in Merrill v. Sherburne, 1 N. H. 204, 8 Am. Dec. 52: 'The former (judicial tribunals) decide upon the legality of claims and conduct, and the latter (legislative tribunals) make rules upon which, in connection with the Constitution, those decisions should be founded. It is the province of the judges to determine what is the law upon existing cases. In fine, the law is applied by the one and made by the other.'

"The Legislature makes a general rule for the regulation of conduct and the admeasurement of right; the judiciary makes a special rule regarding a state of facts which have occurred after the enactment of the general rule by the former, by applying such general rule to the state of facts. The former defines rights and wrongs by a rule laid down in advance; the latter enforces rights and redresses wrongs in cases arising on past occurrences. We have found no more accurate statement of the difference between a legislative and a judicial act than that expressed by Justice Field in his opinion in the Sinking Fund Cases. 'The distinction,' says the learned justice, 'between a judicial and a legislative act is well defined. The one determines what the law is, and what the rights of parties are, with reference to transactions already had; the other provides what the law shall be in future cases arising under it. Wherever an act undertakes to determine a question of right or obligation, or of property, as the foundation on which it proceeds, such act is, to that extent, a judicial one, and not the proper exercise of legislative functions.'"

And further on the opinion by Mr. Chief Justice Williams contains the following:

"The distribution of the powers of government into three separate departments, legislative, executive and judicial, is the basic principle of our constitutional system.

"Mr. Madison said: 'The magistrate, in whom the whole executive power resides, cannot of himself make a law, though he can put a negative on every law; nor ad-

minister justice in person, though he has the appointment of those who do administer it. The judges can exercise no executive prerogative, though they are shoots from the executive stock; nor any legislative function, though they may be advised with by the legislative councils. The entire Legislature can perform no judicial act, though, by the joint act of two of its branches, the judges may be removed from their offices, and though one of its branches is possessed of the judicial power in the last resort. The entire Legislature again, can exercise no executive prerogative, though one of its branches constitutes the supreme executive magistracy; and another, on the impeachment of a third, can try and condemn all the subordinate officers in the executive department.' (Federalist, No. 47, p. 224.)

"Mr. Hamilton said: 'It equally proves that, though individual oppression may now and then proceed from the courts of justice, the general liberty of the people can never be endangered from that quarter; I mean so long as the judiciary remains truly distinct from both the Legislature and Executive. For I agree that "There is no liberty, if the power of judging be not separated from the legislative and executive powers." (Federalist, No. 78, p. 356.)

"Mr. Webster said: 'It cannot be denied that one great object of written Constitutions is to keep the departments of government as distinct as possible; and for this purpose it imposes restraints designed to have that effect.' (Webster's Works, vol. 3, p. 29.)

"The founders evidently had in mind Montesquieu's Dissertation on the Spirit of the Laws, wherein he said: 'There is no liberty if the power of judging be not separated from the legislative and executive powers, when the legislative and executive powers are united in one body or person. There can be no liberty, because apprehensions may arise lest the same monarch or senate should enact tyrannical laws to execute then in a tyrannical manner. * * * Were the power of judging joined with the legislative, the life and liberty of the subject would be exposed to arbitrary control, for the judge would then be the legislator. Were it joined to the executive, the judge might behave with all the violence of an oppressor.'"

We therefore conclude that the section of the Session Laws 1913, supra, involved, is invalid, being in conflict with section 1, art. 4, of the Constitution, by attempting to exercise judicial power.

We will next consider the meaning of that part of section 27, art. 10, of the Constitution, "by majority of the qualified property taxpaying voters of such city or town voting at an election to be held for that purpose."

This court, in Mason et al. v. School District No. 72, Blaine County et al., 66 Okla. 239, 168 Pac. 798, construed section 26, art. 10, of the Constitution, which provides:

"No county, city, town, township, school district, or other political corporation, or subdivision of the state, shall be allowed to become indebted, in any manner, or for any purpose, to an amount exceeding, in any year, the income and revenue provided for such year, without the assent of three-fifths of the voters thereof, voting at an election to be held for that purpose. * * *"

And where, in the syllabus, it was held that:

"Under section 26, article 10, of the Constitution of this state, a majority of three-fifths of the legal voters at an election therefor, and not three-fifths of the legal electors residing in a school district, authorizes the issue of school bonds in excess of the income and revenue of such school district in any one year."

In Rasure, County Supt., v. Sparks, 75 Okla. 181, 183 Pac. 495, opinion by Sharp, J., paragraph 3 of the syllabus, it is said:

"Section 2, c. 202, Laws 1915, providing that 'if sixty (60) per cent. of the voters of such school district at the election held * * * shall vote to dissolve the consolidated district,' etc., requires only that 60 per cent. of the votes cast at the election shall be in favor of dissolution, and not that 60 per cent. of all the voters of the district shall vote therefor."

To the same effect is North v. McMahan, 26 Okla. 502, 110 Pac. 115; Faulk v. Board of Co. Comm'rs, 40 Okla. 705, 140 Pac. 777; Eakin et al. v. Chapman, Co. Treas., 44 Okla. 51, 143 Pac. 21.

In Tilley v. Overton, Co. Treas., 29 Okla. 292, 116 Pac. 945, in syllabus 4, it was said by Hayes, J.:

"Said section 9, art. Constitution, does not require that a levy in excess of 5 mills on the dollar in any year for school district purposes, not exceeding 15 mills, shall receive at an election thereon a majority of the votes of the voters residing in the district, and requires only that it shall receive a majority of the said voters voting at the election thereon."

It seems quite clear to us that section 27, art. 10, of the Constitution, providing that "any incorporated city or town in this state, may, by a majority of the qualified property tax-payng voters of such city or town, voting at an election held for that purpose,"

means just what it says, that is, "a majority of such voters voting," and does not mean "a majority of such voters in such city or town."

We are clearly of the opinion that there is no error in the judgment of the trial court, and the same is therefore affirmed.

HARRISON, C. J., and MILLER, ELTING, KENNAMER, and NICHOLSON, JJ., concur.