**ADAMS v CITY OF HOBART et al.**

No. 25157.     Dec. 5, 1933.

Carder & Carder, for plaintiff is error.

Clarence W. Hunter, City Atty., and Paul Y. Cunningham, Co. Atty., for defendants in error.

RILEY, C. J. On September 28, 1931, at an election held in accordance with the

law, the qualified taxpaying voters of the city of Hobart authorized said city to issue its negotiable bonds in the sum of $250,-000 to provide funds for the purpose of extending and improving its waterworks system owned and to be owned exclusively by said city, and authorized the levy and collection of an annual tax, in addition to all other taxes, upon all property subject to taxation in said city to provide money with which to pay the interest and principal of said bonds. Thereafter the proceedings and bonds were approved by the Attorney General; after which the bonds were advertised and sold by said city to the Reconstruction Finance Corporation, to be delivered in three parts. On August 15, 1933, the first two parts of said bonds, aggregating $200,000, had been delivered to the Reconstruction Finance Corporation, and had been paid for, leaving bonds in the amount of $50,000 to be delivered. On November 3, 1933, this action was commenced by plaintiff, J. L. Adams, a resident and property owning taxpayer of said city against the city, its mayor and councilmen, the city clerk and city treasurer of said city, the county treasurer and the county excise board of Kiowa county, to enjoin the city, its said officers and agents, from making delivery of the $50,000 in bonds then remaining undelivered, and to enjoin the county excise board and its members from levying and certifying any tax to be assessed or levied against the property situated in said city for the purpose of providing for the interest and principal of that part of said bond issue, and to enjoin the county treasurer from collecting any such tax.

The petition set out all the proceedings had in connection with the authorization and issuance of said bonds with great particularity and showed that said proceedings had been had in accordance with the law down to the delivery of the $200,000 in bonds to the Reconstruction Finance Corporation. The petition, as grounds for the relief sought, alleged:

"10. That the bonds above specifically described, being to the extent of $50,000 in par value of said issue, being undelivered and for which payment has not been made, does not now, and did not on the 15th day of August, 1933, or at any time thereafter, constitute an existing indebtedness, bonded or otherwise, against the city of Hobart, Okla., within the saving provision of the constitutional amendment of the Constitution of Oklahoma, being designated as an amendment to section 9, of article 10, of the Constitution of Oklahoma, which was ratified and adopted by the vote of the

people of Oklahoma, on the 15th day of August, 1933, and by its terms became effective as of that date, and by the terms and provisions of which it was expressly provided by the people that from its effective date that the total tax for all purposes, on an ad valorem basis, should not exceed in any taxable year, fifteen mills on the dollar, to be apportioned between the county, city, town and school district by the county excise board, until a regular apportionment thereof was otherwise prescribed by the Legislature, making certain exceptions relating to taxes for school purposes, and making provision for such necessary additional levy as reasonably required to take care of existing indebtedness, bonded or otherwise, existing at the effective date of the amendment; that said amendment by its language, being the mandate of the people, provided for a maximum tax levy, and did thereby annul and repeal, or modify sections 10, 26, 27, and 28 of article 10, of the Constitution of Oklahoma."

The district judge being absent from said county, application was made to the county judge for a temporary injunction, which was granted. Thereafter, on November 4th, the county treasurer and county excise board, represented by the county attorney, and the city of Hobart and its officers and agents, represented by the city attorney of said city, filed separate motions to dissolve said temporary injunction, setting up as grounds: That the petition of plaintiff was insufficient to entitle the relief sought; that said petition shows no grounds for the interposition of equity; that it did not state facts sufficient to constitute a cause of action against defendants or either of them; that said petition showed upon its face that all the proceedings had for the issuance and sale of said bonds were had strictly in accordance with law, and the further grounds were pleaded:

"6. Because section 27, of article 10, of the Constitution of the state of Oklahoma is a grant of power to the people of a city or town to issue bonds for a public utility, in excess of and independent of section 9, of said article, originally as well as amended, relied upon by said plaintiff.

"7. Because section 27, article 10, of the Constitution is a special grant of power to incorporated cities and towns to incur debts for public utilities to be owned exclusively by such cities and towns.

"8. Because section 27, of article 10, of the Constitution is a self-executing grant of power to the qualified property taxpaying voters of a city or town voting at an election held for that purpose, by a majority vote, to become indebted in a larger amount than that specified in section 9,

of said article, both originally and as amended, for the purpose of purchasing or constructing public utilities, or for repairing the same, to be owned exclusively by such city.

"9. Because section 9, of article 10, of the Constitution of the state of Oklahoma, as amended, relied upon by plaintiff, does not in any manner, operate to repeal, vacate, modify or nullify section 27, of article 10, of the Constitution of the state of Oklahoma, or any provision thereof."

Upon proper notice the motions were presented to the district court and were sustained and the action ordered dismissed. From this judgment and order, plaintiff prosecutes this appeal. Because of the important public question involved, the cause has been advanced by this court.

The sole question presented is whether by the adoption at the election held throughout the state on August 15, 1933, of the amendment to section 9, art. 10, Constitution, the provisions of section 27, art. 10, of the Constitution were repealed, or so modified as to thereafter prevent the creation of indebtedness therein authorized by cities and towns and prevent the levy and collection of the taxes therein authorized and required, sufficient to pay such indebtedness in addition to other taxes provided for in the Constitution.

Section 9, art. 10, before the amendment thereof, provided:

"**Except as herein otherwise provided,** the total taxes, on an ad valorem basis, for all purposes, state, county, township, city or town and school district taxes, shall not exceed in any one year thirty-one and one-half mills on the dollar to be divided as follows:

"State levy, not more than three and one-half mills; county levy, not more than eight mills: Provided that any county may levy not exceeding two mills additional for county high school and aid to the common schools of the county, not over one mill of which shall be for such high school, and the aid to said common schools shall be apportioned as provided by law; township levy, not more than five mills; city or town levy, not more than ten mills; school district levy, not more than five mills on the dollar for school district purposes, for support of common school: Provided, that the aforesaid annual rate for school purposes may be increased by any school district by an amount not to exceed ten mills on the dollar valuation, on condition that a majority of the voters thereof voting at an election, vote for said increase."

Said section, as amended, provided:

"Section 9, **Except as herein otherwise**

**provided,** the total taxes for all purposes, on an ad valorem basis, shall not exceed, in any taxable year, fifteen (15) mills on the dollar, to be apportioned between county, city, town and school district, by the county excise board, until such time as the regular apportionment is otherwise provided for by the Legislature.

"No ad valorem tax shall be levied for state purposes, nor shall any part of the proceeds of any ad valorem tax levy upon any kind of property in this state be used for state purposes; provided, however, any county of the state may make an additional ad valorem levy, not exceeding two (2) mills on the dollar valuation, on any property within the county, for separate schools for white and negro children, such aid or money raised therefor to be apportioned as provided by law; provided further, the annual ad valorem tax rate for school purposes may be increased, in any school district, by an amount not to exceed ten (10) mills on the dollar valuation, upon all property in the district, on condition that a majority of the qualified voters of such district voting at an election, vote for such increase, provided, however, that the Legislature shall by proper laws prescribe the manner and method of conducting said election, but until such legislative provision is made, said levy may be made and said election held as now provided by law; and provided further, that limitations on the levy of such additional 10 mill levy may be made hereafter by the Legislature.

"Provided, also, an additional levy may be made each year, in the state and in the various subdivisions thereof, on all personal and real property subject to ad valorem taxes to reasonably take care of bonded and other valid indebtedness of the state and its various subdivisions existing at the time this amendment is adopted and becomes effective, but such necessary additional levy of assessment on such property to take care of such indebtedness existing and owing by the state and its subdivisions at such time shall in no event exceed levy or assessment for which such property would have been liable under the Constitution and laws of the state as same existed immediately prior to the adoption of this amendment. No provisions hereof shall be construed to tax churches or schools."

It will be observed that said section as amended does not purport to prohibit any city or town **from becoming indebted** for the purpose of purchasing or constructing public utilities or for repairing the same as provided in section 27, art. 10, Constitution, but in this case the petition alleges that it is the purpose of the excise board of the county to apportion the entire 15 mills authorized by section 9, as amended, to the city and school district for current

expenses, so as to leave no part thereof to be applied to the interest or principal of the bonds in question, and that it was the purpose of the excise board to levy 3.05 mills tax on the dollar on all the taxable property in said city, in addition to all the taxes authorized by section 9, of art. 10, as amended, to apply on the interest and principal of the $50,000 in bonds here involved.

The entire controversy appears to depend upon the effect of the words, "except as herein otherwise provided, the total taxes on an ad valorem basis for all purposes," as used in section 9, art. 10, Constitution, before its amendment and thereafter.

In Dunagan v. Town of Red Rock, 58 Okla. 218, 158 P. 1170, it is held that a public waterworks system, to be owned and controlled exclusively by an incorporated town or city, is a public utility within the meaning of section 27, art. 10, of the Constitution.

In Williams v. City of Norman, 85 Okla. 230, 205 P. 144, it is held:

"Section 27, art. 10, of the Constitution is a self-executing grant of power to the qualified property taxpaying voters of a city or town voting at an election held for that purpose, by a majority vote, to become indebted in a larger amount than that specified in sections 9 and 26, art. 10, of the Constitution, for the purpose of purchasing or constructing public utilities, or for repairing the same, to be owned exclusively by such city. * * *

"The construction of a constitutional provision must not be so strict or technical as to defeat the evident object and purpose of its adoption."

In Kirk v. School Dist. No. 24, Greer County, 108 Okla. 81, 234 P. 596, it is held:

"Sections 9 and 10, of art. 10, of the Constitution of Oklahoma limit the amount of taxes to be levied for school purposes to 20 mills on the dollar. However, the limitation therein provided does not interfere or conflict with the provisions of sections 26, 27 and 28 of art. 10, and are intended for different purposes."

In the body of the opinion, it is said:

"In construing the various provisions of our Constitution, that construction must be placed upon them which will give full force and effect to each provision thereof, where the same may be done without an irreconcilable conflict. It seems clear, therefore, that the clause 'except as herein otherwise provided' in section 9, art. 10, refers to the exceptions as found in sections 26, 27, and 28, of art. 10. We see no conflict in these provisions of the Constitution and plaintiff was in error when he attempted to apply the provisions of sections 9 and 10, art. 10, to the bond issue authorized by sections 26, 27, and 28 of art. 10."

If section 9, art. 10, of the Constitution, before the amendment thereof, related to entirely different methods of raising revenues from that provided in sections 26 and 27, and were intended for entirely different purposes, and if section 27, supra, is a self-executing grant of power to the qualified property taxpaying voters of a city or town voting at an election held for that purpose to incur the indebtedness for the purposes therein specified, it is equally clear that said section 27 is an independent grant of power to such voters to authorize the levy and collection of a tax on all taxable property within such city or town, in addition to all other taxes authorized by the Constitution, sufficient to pay the interest on the bonds so authorized and to provide a sinking fund with which to pay the principal. In other words, since section 27 is a self-executing grant of power to incur indebtedness, it is likewise a self-executing grant of power to pay the indebtedness so created. Said section 27 not only specifically grants the power to incur indebtedness for enumerated purposes, but the imperative command of the provision is that before or at the time of incurring such indebtedness an annual tax to pay same, in addition to all other taxes provided for by the Constitution, shall be provided.

Bearing in mind that section 9 of art. 10, Constitution, relates to an entirely different method of raising revenues from that provided by section 27, art. 10, and that these constitutional provisions exist for entirely different purposes. It is clear that two separate amendments would be required to amend the two separate and distinct methods for raising revenue. This being true, if the contention of plaintiff is correct that by the adoption of the amendment to section 9, art. 10, Constitution, the provisions of section 27, art. 10, Constitution, were necessarily repealed or modified, then it necessarily follows that the judgment of the trial court is correct, for to effectuate the amendment of the one and the repeal or modification of the other section, the provisions of section 1, art. 24, Constitution would require the submission of, and affirmative majority vote on, two amendments separately.

Section 1, art. 24, of the Constitution, provides:

"* * * If two or more amendments are proposed, they shall be submitted in such manner that electors may vote for or against them separately." State v. Powell, 77 Miss. 543, 27 So. 929, 48 L. R. A. 652; Lozier v. Alexander Drug Co., 23 Okla. 1, 99 P. 808; Miller v. Johnson, 92 Ky. 589, 18 S. W. 22; State v. Tufly, 19 Nev. 391, 12 P. 836.

This was not done. If it be held that from the terms of section 9, art. 10, as amended, the Legislature, in submitting the amendment, and the people in adopting it, intended to and purported to amend section 9, art. 10, and also intended and purported to repeal or modify section 27, art. 10, the amendment must fail in such purposes as not having been properly submitted to the people.

It is quite clear, however, that section 27 is not specifically repealed or amended by the amendment of section 9, for there is no specific repeal or amendment of the power granted by section 27. That power is the right to incur indebtedness for the purposes specified in section 27. Nor is there a specific repeal of the power and authority in section 27 contained, to provide for the additional tax levy. The contention is made that the power to authorize the additional tax levy contained in section 27, art. 10, was repealed by implication, by the adoption of the amendment to section 9, art. 10. If this be true, then the power granted to **incur the indebtedness** could never be exercised, for said section 27, by its terms, requires that before or at the time of incurring the indebtedness, the additional annual tax must be provided.

There appears to be no reason for holding that the words, "except as herein otherwise provided, the total taxes on an ad valorem basis for all purposes," as amended, had a more restricted meaning than did the same words as used in the section before it was amended.

The effect of the amendment is merely to remove section 9, art. 10, of the original Constitution and insert therein the section as amended. When the amendment was approved, it immediately became effective, and the section, as so amended, became an integral part of the Constitution of the state and must be construed in connection with the other provisions of the Constitution.

Counsel for plaintiff cites the rule in reference to the operation and effect of constitutional amendments which they say is well stated in 12 C. J. 724, which is that "amendments are considered in the nature of codicils or second instruments altering or rescinding the original to the extent to which they are in conflict, and of course are to be treated as having a force superior to the originals to the extent of such conflict. If a constitutional amendment does not in terms expressly repeal a constitutional provision, yet if it covers the same subject provided for in such provision, the amendment will be regarded as a substitute for it and suspending it."

But we have pointed out above that this court has repeatedly held that sections 9 and 27, of art. 10, of the Constitution covered different subjects; therefore, the rule cited and relied upon by plaintiff is in this respect not applicable.

The rule cited goes further and says, "but if on consideration of the language of the amendment, and the history and purpose of its adoption, it appears that it was not the intent to alter or repeal a provision of the original Constitution, such provision remains in full force unaffected by the amendment."

The Legislature in framing and submitting the amendment, and the voters when they cast their ballot for it, had before them a long line of decisions of this court. Some of these decisions were promulgated by the court at a time when several of the members were jurists who had also been members of the Constitutional Convention. Doubtless these jurists were largely instrumental in framing the two sections of the Constitution under consideration as well as the decisions holding that the clause, "except as herein otherwise provided the total taxes, on an ad valorem basis," etc., used in section 9, art. 10, Constitution, referred to the exceptions found in sections 26 and 27 of art. 10 of the Constitution, and there was no conflict in these provisions. Williams v. City of Norman, supra; State ex rel. Edwards v. Milar, 21 Okla. 448, 96 P. 747; City of Ardmore v. St. ex rel. Best, 24 Okla. 862, 104 P. 913; Coleman v. Frame, 26 Okla. 193, 109 P. 928; Dunagan v. Red Rock, supra.

With this long line of decisions in view, comprising as they do a large part of the history of the development of this state, it is clear that the clause by the framers of the amendment was left in section 9, art. 10, as amended, as it was in the original section for the specific purpose of preserving unimpaired the rights and powers to the taxpaying voters of the cities and towns of the state to incur indebtedness for the purposes set out; and to provide for payment of the indebtedness in the manner specified by section 27, art. 10, Constitution.

The meaning of the word "herein" in legal phraseology is to be determined by the context. It may refer to the single section or to the chapter, or to the article or to the whole enactment in which it is used. Words & Phrases (1st Ser.) vol. 4, p. 3281; 29 C. J. 348.

It has frequently been held to refer to the entire act rather than the particular section in which it appears. In re Brearton, 89 N. Y. Supp. 893; Williams v. City of Norman, supra, and cases therein cited.

The word "herein" is used frequently in previous and subsequent sections of the Constitution of this state with the meaning we have attributed to it. That is, that it refers to other provisions of the Constitution, and not necessarily to the provision in which it is used.

It is contended that the word as used in section 9, art. 10, as amended, refers only to the exceptions contained in that particular section. But section 9, art. 10, before it was amended contained at least two specific exceptions or provisions under which the total taxes on an ad valorem basis might be increased above the 31½ mills on the dollar as provided in the first clause of the section. Notwithstanding these specific exceptions in the section, this court, as herein pointed out, has frequently held that the phrase, "except as herein otherwise provided, the total taxes on an ad valorem basis for all purposes," referred to the provisions of sections 26 and 27, art. 10, Constitution, providing for the levying of taxes on an ad valorem basis, in certain cases in addition to the other taxes provided for by the Constitution.

The clause being so carefully preserved in section 9, as amended, indicates very clearly that it was the intent of the Legislature in framing the amendment and of the voters in adopting it, that the phrase so used should still refer to the exceptions contained in section 27 of art. 10, Constitution, as well as to the exceptions contained in section 9 itself, as amended.

It has been held that there was no conflict between the provisions of section 9 before the amendment thereof and section 27. Neither is there conflict since the amendment.

The first clause of the second paragraph merely makes it certain that no part of the 15 mill tax authorized by the first paragraph shall ever be used for state purposes. This was doubtless thought necessary in view of the provision in the first paragraph that the county excise board is given the power to apportion the taxes between the county, city, town and school district, only until such time as the Legislature shall otherwise provide for such apportionment. So it is made certain that the Legislature, under the power granted to provide for apportionment in the future, can never apportion any part of such tax to the state for state purposes.

The next provision is that any county may make an additional levy, not exceeding two mills, for the support of separate schools; this exception is plain and unambiguous. The next proviso is for an additional or increased levy of not to exceed ten mills in any school district for school purposes, conditioned that such additional levy be approved by a majority of the qualified voters of such district voting at an election, with the further provision that this additional levy may be further limited by the Legislature.

The next proviso is that still an additional levy may be made in the state and in the various subdivisions thereof to reasonably take care of bonded or other valid indebtedness existing at the time of the adoption of the amendment. This proviso is evidently intended to make it sure and certain that the limitation prescribed in the first paragraph of the section, as amended, should never be construed so as to prevent the levy and collection of a tax to take care of the then existing valid contracts of the state and its various subdivisions. That is to make it certain that the section, as amended, should never be construed so as to impair the obligation of contracts contrary to the provisions of section 15, art. 2, Constitution of the state of Oklahoma, or in violation of the provisions of section 10, art. 1, of the Constitution of the United States, which provides that no state shall pass any law impairing the obligation of contracts.

The final proviso is that such additional levies made to take care of the indebtedness existing and owing by the state or its subdivisions at such time should in no event exceed the levy or assessment for which such property would have been liable under the Constitution and laws of the state as same existed immediately prior to the adoption of the amendment. This was evidently inserted for the sole purpose of making it certain that the taxpayers could discharge such valid indebtedness without being subjected to a higher rate of taxes than that which was provided at the time the amendment was adopted. This last restriction is by the very terms thereof limited in its application to care for the then existing in-

debtedness. There is nothing in the entire section, as amended, that in any way conflicts with or restricts the powers granted by section 27, art. 10, Constitution. It is, therefore, clear that it was not intended by the Legislature in drafting and submitting the amendment, nor by the voters in adopting the amendment, that section 9, art. 10, as so amended, should ever restrict or limit the power of incorporated towns and cities to incur indebtedness for the purpose of purchasing, building, or repairing public utilities owned and to be owned exclusively by such municipalities, or to levy and collect an annual tax, on an ad valorem basis in addition to all other taxes provided for by the Constitution, sufficient to pay the interest on such indebtedness as it falls due and also to constitute a sinking fund for the payment of the principal as provided in section 27, art. 10, Constitution.

Repeals by implication are not favored, and the repugnancy of the two statutes should be very clear to warrant the court in holding that the latter in time repeals the other when it does not in terms purport to do so. Cooley, Constitutional Limitations (7th Ed.) pp. 216, 217.

There being no conflict between the provisions of section 27, art. 10, and section 9, art. 10, as amended, there is no basis for holding that section 27 was repealed, amended, or modified by implication by the amendment of section 9, art. 10, Constitution of Oklahoma.

It follows that the judgment of the trial court is correct. The judgment is affirmed.

CULLISON, V. C. J., and SWINDALL, ANDREWS, McNEILL, OSBORN, BAYLESS, and WELCH, JJ., concur. BUSBY, J., absent.