LINTHICUM, *County Treasurer*, v. SCHOOL DIST. NO. 4 OF CHOCTAW COUNTY.

No. 7188. Opinion Filed August 7, 1915.

(149 Pac. 898.)

1.  CONSTITUTIONAL LAW—Operation—Self-Executing Provisions —Common School Fund. The amendment to the Constitution, adopted at an election held on August 5, 1913, known as section 12a of article 10, which provides: "All taxes collected for the maintenance of the common schools of the state, and which are levied upon the property of any railroad company, pipe line company, telegraph company, or upon the property of any public service corporation which operates in more than one county in this state, shall be paid into the common school fund and distributed as are other common school funds of this state"—is

Opinion of the Court.

not self-executing by its own express terms; nor can it be given effect by the aid of any constitutional provision or legislative enactment in force at the time of its adoption.

2. **CONSTITUTIONAL LAW—Amendment Not Self-Executing—Effect on Existing Laws.** When an amendment to a Constitution is not self-executing by its own terms, and it cannot be given effect by the aid of any constitutional provision or legislative enactment in force at the time of its adoption, former constitutional provisions and legislative enactments are not affected thereby, and remain in force until the amendment is vitalized by legislative action.

(Syllabus by the Court.)

*Error from District Court, Choctaw County;*

*C. E. Dudley, Judge.*

Action by School District No. 4 of Choctaw County against Ed Linthicum, as Treasurer of Choctaw County. Judgment for plaintiff, and defendant brings error. Affirmed.

*S. P. Freeling,* Attorney General, *J. H. Miley,* Assistant Attorney General, and *R. K. Warren,* County Attorney of Choctaw County, for plaintiff in error.

*R. E. Stephenson,* for defendant in error.

*Rice & Lyons, Clarence Davis, C. O. Blake,* and *J. G. Gamble, amici curiae.*

KANE, C. J. This was a suit in equity, commenced by School District No. 4 of Choctaw County, the defendant in error herein, as plaintiff, against Ed Linthicum, as county treasurer of said county, the plaintiff in error herein, as defendant, for the purpose of enjoining the defendant as treasurer from paying into the common school fund of the state certain moneys collected by him for the support of the common schools. Upon trial to the court the relief prayed for was granted, to reverse which action this proceeding in error was commenced. For convenience, hereafter the parties will be referred to as

50    SUPREME COURT OF OKLAHOMA.

Linthicum, County Treasurer, v. School Dist. No. 4 of Choctaw County.

"plaintiff" and "defendant," respectively, in accordance with their designation in the trial court.

It seems that the money involved came into the hands of the defendant through a tax levy made pursuant to article 8 of chapter 72, Rev. Laws 1910, as amended by chapter 195, Session Laws 1913, and that the county treasurer is of the opinion that he is required to pay the same into the common school fund of the state, to be distributed as other common school funds of the state, by virtue of an amendment to the Constitution, adopted at a special election held on the 5th day of August, 1913, designated section 12a of article 10, which reads as follows:

"All taxes collected for the maintenance of the common schools of this state, and which are levied upon the property of any railroad company, pipe line company, telegraph company, or upon the property of any public service corporation which operates in more than one county in this state, shall be paid into the common school fund and distributed as are other common school funds of this state."

On the other hand, the main contention on the part of plaintiff is that section 12a, *supra,* is not self-executing, and therefore the funds collected by the county treasurer, having been levied for school district purposes, should be distributed in pursuance of the Constitution and laws of the state as they existed prior to the adoption of section 12a, *supra.* This latter contention, it seems to us, is well taken. Section 12a injects such a new, if not discordant, element into the system of taxation for common school purposes, formerly designed by the Constitution and the legislation enacted for the purpose of vitalizing its provisions, that it is impossible to conclude that the people in adopting said section 12a intended it to go into effect without the aid of additional legislation. As was said in

*Ex parte Wagoner,* 21 Okla. 33, 95 Pac. 435, 18 Ann. Cas. 197:

"Our Constitution contains many instances of non-self-executing provisions. In these cases there is always some indication that something is left for the Legislature to do, or there is something in the nature of the provision that renders such legislation necessary."

In the provision involved herein, there are many indications that something was left for the Legislature to do, and there are many things in the nature of the provision that render additional legislation necessary. The scheme of taxation for the support of the common schools of the state, prior to the adoption of section 12a, may be briefly outlined as follows:

(1) Section 3, art. 11, Williams' Const., provides that:

"The interest and income of the permanent school fund, the net income from the leasing of public lands which have been or may be granted by the United States to the state for the use and benefit of the common schools, together with any revenues derived from taxes authorized to be levied for such purposes, and any other sums which may be added thereto by law, shall be used and applied each year for the benefit of the common schools of the state, and shall be, for this purpose, apportioned among and between all the several common school districts of the state in proportion to the school population of the several districts."

(2) Section 9, art. 10, Williams' Const., provides that any county may make a levy of not exceeding one mill in aid of the common schools of the county. The same section limits the levy of taxes on an *ad valorem* basis to "not more than five mills on the dollar for school district purposes, for support of common schools; provided, that the aforesaid annual rate for school purposes may be in-

creased by any school district by an amount not to exceed ten mills on the dollar valuation, on condition that a majority of the voters thereof voting at an election, vote for said increase."

(3) Pursuant to the power conferred by section 3, art. 11, *supra,* to lay a portion of *the ad valorem* tax upon all the taxable property in the state to be applied in aid of the common schools, the Legislature (section 7374, Rev. Laws 1910) authorizes the levy of an *ad valorem* tax of one-fourth of one mill on all the property of the state for the aid of the common schools thereof.

(4) Pursuant to that part of section 3, art. 11, Const., which provides that "any other sums which may be added by law to the interest and income of the permanent school funds," etc., shall be used and applied each year for the benefit of the common schools of the state, the Legislature provided (section 7815, Rev. Laws 1910) that the proceeds of all moneys collected from fines, forfeitures, escheats, penalties, proceeds from the sale of estrays, and all moneys collected from marriage licenses shall, together with a school tax to be levied by the board of county commissioners, constitute a county school fund.

(5) Pursuant to section 9, art. 10, of the Constitution, the Legislature (section 7376, Rev. Laws 1910, as amended by section 1, c. 195, Session Laws 1913) provided for the levy of an *ad valorem* tax of not to exceed one mill upon all the taxable property in the county for the aid of the common schools of the county.

(6) By article 8, c. 72, Rev. Laws 1910, the Legislature also provided for the school districts of the state a uniform system of government, invested with power to levy taxes for school district purposes to supplement the

funds and efforts of the state to maintain the public school system. *A., T. & S. F. Ry. Co. v. State,* 28 Okla. 94, 113 Pac. 921, 40 L. R. A. (N. S.) 1.

Section 7378 of said article 8 requires the board of education in each city and the directors of each school district to meet on the first Monday in July of each year, and make out an itemized statement of the fiscal condition of their respective municipalities and of the estimated needs thereof for the current expenses of the ensuing fiscal year, which "estimate shall show:   First, an unexpended balance on hand of the levy for any previous year or years for current expense purposes; second, the estimated income of the municipality from all sources other than from *ad valorem* taxation and such estimated income for school district purposes shall include the apportionment of the income from the common school fund, based on the distribution for the next preceding fiscal year; third, an itemized estimate of the amount necessary for the current expenses of each such municipality for the ensuing fiscal year; fourth, the amount necessary for a sinking fund, sufficient to pay at maturity all bonded indebtedness of such municipality; fifth, the amount necessary to pay the interest coupons falling due on its outstanding indebtedness."

The same section requires said estimate so made out, as soon as completed, to be certified to the excise board of the county.

Section 7380 empowers the excise board to revise and correct any estimate certified to them, and to approve such estimate, if the same shall be within the limit for current expenses provided by law; and after having ascertained the assessed valuation of property taxed *ad valorem* in the county and in each municipal subdivision thereof

54    SUPREME COURT OF OKLAHOMA.

Linthicum, County Treasurer, v. School Dist. No· 4 of Choctaw County.

and the probable income of the county and of each municipal subdivision thereof from all sources, other than *ad valorem* taxation, they shall make the levy therefor, adding thereto the amount ascertained to be necessary for a sinking fund, which, with the money already in such fund, shall be sufficient to pay at maturity all bonded indebtedness of such municipality, and for the interest coupons falling due on the outstanding bonds of such municipality. The levies so made by them shall be certified to the county clerk, who shall extend the same upon the tax roll.

Section 7381 provides that:

"If any estimate certified to the excise board for the current expenses of any county, city, incorporated town, township or school district shall exceed the limits prescribed by the first section of this article (the five mill limit imposed by section 9, art. 10, Const.), and the excise board shall be of the opinion that such excess is reasonably necessary for the current expenses of the municipality for which the same is prepared, they shall enter such fact upon the record of their proceedings and shall give notice by publication in one issue of some newspaper printed in the county that a special election will be held in the county, city, town, township or school district, as the case may be, on the second Tuesday after the first Monday in August next thereafter, for the purpose of submitting to the qualified electors of such county, city, town, township or school district, the question of making such increased levy. Such election shall be held * * * under the provisions of this act, the amount of each proposed levy shall be printed upon the ballot, with the words, 'For the Levy' and 'Against the Levy,' to the left of which shall be printed a square in which the elector shall stamp to indicate his choice: Provided, that in school districts not in cities the election shall be conducted as provided by law for such elections in school districts."

Section 7388 requires the treasurer to collect the taxes thereon levied according to law.

In the case before us, the estimate of the board of education of school district No. 4, requiring a levy in excess of the five-mill limitation prescribed by section 9 of article 10 of the Constitution, having been made, the excise board entered such fact upon the record of their proceedings, gave the notice required, pursuant to section 7381, *supra*, whereupon an election was held, authorizing an increased levy for school district purposes. Clearly, it was not taxes collected in this manner that section 12a requires to be paid into the common school fund and distributed as other common school funds of the state. In plain terms section 12a provides that:

"All taxes collected for the maintenance of the common schools of the state, and which are levied upon the property of any railroad company, pipe line company, telegraph company, or upon the property of any public service corporation which operates in more than one county in this state, shall be paid into the common school fund and distributed as are other common school funds of this state."

Obviously the taxes involved herein were collected solely for school district purposes, and not for the maintenance of the common schools of the state; and they were levied, not "upon the property of any public service corporations," but upon all the taxable property situated in the school district. Section 12a does not in terms purport to provide for the assessment, levy, or collection of a tax, but directs how taxes collected for the maintenance of the common schools of the state which are levied upon the property of certain specified companies or corporations may be distributed when collected, evidently assuming either that there was a law in existence at the time of its

adoption which provided for the levy and collection of such a tax, or that some subsequent Legislature would supply the omission.  As we are unable to find any existing law providing for the assessment, levy, or collection of such a tax, we are forced to the conclusion that the duty of vitalizing section 12a was left for some future Legislature.

In our opinion, a mere review of the laws in force at the time of the adoption of section 12a demonstrates that the legislation relied upon by the Attorney General to vitalize it, to-wit: that enacted for the purpose of vitalizing the provisions of the Constitution as it formerly existed, contemplated an entirely different scheme of taxation for the maintenance of the public school system of the state; and whilst they served well for the purpose for which they were enacted, they are entirely inadequate to vitalize section 12a.  If, as we conclude, section 12a is not self-executing, then the law in effect at the time of its adoption was not thereby repealed, and will continue to be the law governing the assessment, levy, collection, and distribution of taxes for school district purposes until section 12a is vitalized by legislative action.  *Cairo R. R. Co. v. Trout,* 32 Ark. 17; *Roesler v. Taylor,* 3 N. D. 546, 58 N. W. 343; *Doherty v. Ransom County,* 5 N. D. 1, 63 N. W. 148.

For the reasons stated, the judgment of the court below is affirmed.

All the Justices concur.