OKLAHOMA COUNTY, EXCISE BOARD, v. KURN et al.

No. 30239.   July 1, 1941.

*115 P. 2d 113.*

Lewis R. Morris, County Atty., and B. C. Logsdon, Asst. County Atty., both of Oklahoma City, for plaintiff in error.

E. G. Nahler, of St. Louis, Mo., and Cruce, Satterfield & Grigsby, of Oklahoma City, for defendants in error.

DAVISON, J.   This is an appeal from a judgment of the Court of Tax Review sustaining a protest against the levy made by the excise board of Oklahoma county for the estimated financial needs of consolidated school district No. 9.

The controversy involves the surplus remaining in the building fund at the close of the tax year 1939-1940, and the application thereof to the estimated needs of the district for the succeeding fiscal year, and consequent reduction of the tax levy therefor as provided by law. Section 1, art. 13, chap. 66, S. L. 1935; sec. 1, chap. 85, S. L. 1933, 68 Okla. St. Ann. §§ 289, 290. It is alleged that said surplus, as the same was shown in the financial statement submitted by the school district to the excise board, was less than that actually remaining in the appropriation and by reason thereof the levy for the current year was in excess of the legal rate to the extent of the difference between the amount so reported and the balance actually on hand. The Court of Tax Review sustained the protest and ordered the levy decreased accordingly.

The discrepancy in amount comes about by reason of an alleged illegal warrant issued and outstanding against said appropriation. The warrant was given in payment for certain equipment in the form of seats or desks purchased for a new school building in said district. The building fund aforesaid was created by additional tax levies for the purpose of erecting said school building as provided by section 10, art. 10, of the Constitution.

The only question urged by protestants was that by reason of provisions of section 10, the erection of the new building, based on the additional levy aforesaid, could not be applied to the purchase of equipment, such as seats or desks, for said building, but should have been confined wholly and exclusively to the expense of erecting the building. Said section 10 reads as follows:

"For the purpose of erecting public buildings in counties, cities, or school districts, the rates of taxation herein limited, may be increased, when the rate of such increase and the purpose for which it is intended shall have been submitted to a vote of the people, and a majority of the qualified voters of such county, city, or school district, voting at such election, shall vote therefor: Provided, That such increase shall not exceed five mills on the dollar of the assessed value of the taxable property in such county, city, or school district."

The respondent excise board urges that the purchase of such equipment was necessary to the proper use of the school building and was within the powers to be implied from the express powers granted; that the above section authorizing a direct levy for school building purposes includes the implied power to equip such building from said levy, to the extent necessary to place it in condition to use for school purposes.

Protestants argue, however, that the installation of seats and desks, though necessary to the full use of the building, was not a power to be implied from the express power to erect the building as provided in said section, for the reason that there are other methods whereby revenue may be raised for the purchase of equipment for public buildings. To support this reasoning protestants state: The district may become indebted and issue bonds for that purpose (sec. 26, art. 10, Constitution; State ex rel. Grimes et al. v. Board of Education of Oklahoma City et al., 186 Okla. 665, 99 P. 2d 876); and may appropriate for that purpose within the current expense fund (sec. 9, art. 10, Constitution, as amended; sec. 12677, O. S. 1931, as amended, 68 Okla. St. Ann. § 289; Excise Board of Oklahoma County v. Board of Education of Oklahoma City, 178 Okla. 545, 61 P. 2d 693).

From the foregoing citations we believe it is clear that there are other methods, in addition to section 10, supra, whereby the school district may raise funds for the purpose of erecting a school building and purchasing seats and desks therefor. However, we are of the opinion that none of such methods are exclusive, but all are cumulative, and that either method may be followed by the school board. Clearly, sections 9 and 10 of art. 10 of the Constitution do not conflict with the provisions of section 26, art. 10, and both sections are intended for different purposes. Board of Education of Oklahoma City et al. v. Woodworth et al., 89 Okla. 192, 214 P. 1077; Kirk v. School District No. 24, Greer County, 108 Okla. 81, 234 P. 596; Adams v. City of Hobart, 166 Okla. 267, 27 P. 2d 595; Kansas City Southern Ry. Co. et al. v. Le Flore County, 187 Okla. 630, 105 P. 2d 240. We are of the opinion that the sensible view should be that seats and desks for a newly erected school building could be purchased under any of the methods referred to in the preceding paragraph, so that the governing board of the school district could choose the method that to it would seem most proper and expedient.

Protestants argue that, since under section 9, art. 10, the school district is granted the power to use its general or current expense fund for almost any purpose, including equipment for school building, and since under this court's construction of section 26, art. 10, a school district can also issue bonds for the purpose of erecting and equipping school buildings, that if it were intended by section 10, art. 10, that this power be granted to a school district, the framers of the Constitution would have so provided instead of using the language, "for the purpose of erecting public buildings in . . . school districts."

This court has never before passed upon section 10, supra, with reference to the identical question herein involved. In deciding this question we must therefore call into aid the established rules we have heretofore adopted in construing constitutional provisions in general. It also becomes necessary to review the authorities of other states to obtain a better and more comprehensive view of the issues.

We have held that the construction of a constitutional provision must not

be so strict or technical as to defeat the evident object and purpose of its adoption. State ex rel. Edwards v. Millar, 21 Okla. 448, 96 P. 747; Jurney et al. v. Harlow et al., 157 Okla. 54, 10 P. 2d 271. We have also held that where a power is given by statute there is carried with it power to do everything reasonably necessary to make it effective. Missouri, O. & G. Ry. Co. v. State, 29 Okla. 640, 119 P. 117.

Section 10, supra, has been held to be self-executing. This section is a grant of power to the people of the municipalities, complete in itself and needing no legislation to put it in force. Protest of Chicago, R. I. & P. Ry. Co., 160 Okla. 226, 16 P. 2d 855.

In the case of Territory ex rel. Overholser v. Baxter, Auditor, 16 Okla. 359, 83 P. 709, this court held that the power to erect a courthouse includes, by implication, the necessary power to purchase fixtures and permanent furnishings therefor. It is true that the above opinion was adopted in territorial days, under a territorial statute, before the adoption of our Constitution, and while the case is not directly in point, the reasoning therein is of value in the consideration of the present case.

The general rule involving constitutional construction of implied powers is stated in 12 C. J. 719, as follows:

"It would not be practicable, if possible, in a written Constitution, to specify in detail all of its objects and purposes or the means by which they are to be carried into effect. Such prolixity in a Code designed as a frame of government has never been considered necessary or desirable; therefore, constitutional powers are often granted or restrained in general terms from which implied powers and restrictions to be found in constitutional provisions are therefore a very important element to be considered. It is an established rule of construction that, where a Constitution confers a power or enjoins a duty, it also confers, by implication, all powers that are necessary for the exercise of the one or for the performance of the other. . . ."

In the case of Hudgins et al. v. Mooresville Consol. School District, 312 Mo. 1, 278 S. W. 769, the court had under consideration a provision of the Missouri Constitution which is in terms very similar to the provisions of section 10, art. 10, supra. There the court held that the authority granted by the Constitution, when its requirements are complied with to increase a levy for the erection of a school building, carries with it, as a necessary sequence to its erection, the right to equip same.

There are very few decisions covering the involved question. The weight of authority, however, seems to be that the constitutional and statutory power to erect a building, by implication, includes the power to put into it by the same levy the equipment necessary to place it in condition for its intended use.

Defendants in error cite the case of Grabe v. School District No. 20, 53 S. D. 579, 221 N. W. 697, and quote from same at length. The opinion supports their theory, but the reading of it discloses that it is not supported by authority except its peculiar interpretation of the constitutional provisions as reflected by statutory construction prevailing in South Dakota. The conflict of this case has been recognized in later decisions and rejected as unsound. In Hendricks et al. v. School District No. 1 et al., 44 Wyo. 204, 10 P. 2d 971, referring to this case on this point, it was said:

". . . There is a conflict in the authorities on that point. Grabe v. School District 20, 53 S. D. 579, 221 N. W. 697, seems to sustain that contention. The reasoning in other cases would lead to the contrary conclusion."

The Wyoming opinion, supra, then cites other authorities to the contrary and concludes as follows:

"Power to erect a schoolhouse should ordinarily, doubtless, be held to include power to put into it the necessary equipment, such as desks, boards, etc., just as much as a heating plant. . . ."

It has been held a number of times that a grant of power includes the nec-

essary power to carry it out. 56 C. J. 477; Board of Directors of Public Schools of Parish of Lincoln v. Ruston State Bank, 133 La. 109, 62 So. 492; Midland Special School Dist. of Sebastian Co., Ark., v. Central Trust Co. of Illinois, 1 Fed. 2d 124.

In the case of Board of Com'rs of Buncombe County et al. v. C. N. Malone & Co., 179 N. C. 110, 101 S. E. 552, the holding is confined to the rule that power to erect a building includes the power to equip it with all necessary things which permanently become a part thereof.

The Supreme Court of Wyoming in a recent decision (Jewett et al. v. School Dist. No. 25 in Fremont County, 49 Wyo. 277, 54 P. 2d 546) again passed on the question involved herein, and we think the reasoning therein is sound. The court reviewed the authorities in an exhaustive opinion which we believe to be decisive of the question before us. In the body of this opinion it is said:

". . . Every school building, or an enlargement thereof, requires some equipment which becomes part of the building, and we think that the better authority is to the effect that power to erect or enlarge a building should be construed as impliedly and necessarily including equipment of that nature, and we so hold. . . ."

We conclude that section 10, art. 10, of the Constitution, authorizing a direct levy for the purpose of erecting school buildings, includes the inherent and implied power to apply a portion of the proceeds derived from such increase to the purchase of necessary equipment which permanently becomes a part of such newly constructed buildings, and we so hold. We further conclude, and hold, that seats and desks for such a building are proper and necessary equipment therefor. In so holding, however, we desire to make it clear that under our decision it is necessary to install said equipment as a part and parcel of the building when the erection takes place. Otherwise, it would be in the nature of repairs, which is not covered by section 10, supra.

The protest is hereby denied.

WELCH, C. J., CORN, V. C. J., and RILEY, OSBORN, BAYLESS, HURST, and ARNOLD, JJ., concur. GIBSON, J., dissents.

---

GIBSON, J. (dissenting). I think the judgment of the trial court should be affirmed.

The majority opinion concedes that other legal methods existed whereby the revenue for purchase of equipment might have been raised. This circumstance in itself is sufficient to destroy the basic principle upon which is founded the general rule that express statutory or constitutional powers carry with them all incidental powers reasonably necessary to the accomplishment of the express powers.

Since other methods existed whereby funds could be obtained for the purchase of equipment, the holding that such purchase was a power reasonably necessary to be implied hardly carries conviction. Especially is this true in view of the rule that the powers of public officials in the matter of levying taxes are to be strictly construed. Price v. Mahoney, 175 Okla. 355, 53 P. 2d 257.

This rule of strict construction of the statutory and constitutional powers of public officials in levying taxes has been stated innumerable times and always consistently since the adoption of our Constitution and the erection of our state. But now, in order to reach its conclusion, the majority opinion liberally construes the constitutional provision for increasing the rate of taxation for the purpose of "erecting public buildings" to mean erecting and equipping such newly constructed public buildings. No authority directly in point is cited. Some reliance is placed on Territory v. Baxter, 16 Okla. 359, 83 P. 709, wherein it was held that the statutory power to erect a courthouse and issue bonds in payment therefor included the "necessary and indispensable power to purchase fixtures and permanent furnishings for the comple-

tion of such courthouse, to place the same in fit condition to be used for the transaction of public business, and to issue bonds in payment therefor." The court was there construing section 1, art. 1, ch. 12, S. L. 1897 (now sec. 7505, O. S. 1931, 19 Okla. Stat. Ann. § 734). But it is to be noted that the law in force at that time authorized the county commissioners to submit to a vote of the people any question involving an extraordinary outlay of money by the county (sec. 1408, Wilson's Stat. 1903). This the commissioners did in that case. Along with the question of erecting the courthouse, the question of the purchase of furniture and fixtures was also submitted. There was full statutory authority to become indebted for the fixtures, and therefore there was no necessity for searching for implied powers.

The case of Hudgins v. Mooresville Consolidated School Dist., 312 Mo. 1, 278 S. W. 769, cited in support of the majority view on the particular question, is not in point. While the section of the Missouri Constitution there construed contains a provision similar to our section 10, art. 10, there are many other provisions found in the same section. That case involved a bond issue for building purposes, and the funds derived therefrom. In this state a bond issue would be controlled by section 26, art. 10, of the Constitution, and not by section 10, art. 10. The Missouri case held that the bond issue was proper under provisions similar to said section 10. But section 10 merely authorizes the levy of a tax for building purposes, not the creation of a debt for that purpose by bond issue as does section 26, art. 10. Kirk v. School Dist. No. 24, Greer Co., 108 Okla. 81, 234 P. 596. The holding in the cited case is so dissimilar to our own decisions in the matter of interpretation of the constitutional provisions that it does not constitute authority for the majority view. However, the Court of Appeals of Missouri has since held that a school district may not use any of a bond issue money for furnishings of a school building where the proposition on bond issue election did not include furnishings. Rector v. Consoli-

dated School Dist. No. 3, etc. (Mo. App.) 58 S. W. 2d 785. This is not in accord with the decision in the Hudgins Case.

In Hendricks v. School Dist. No. 1, 44 Wyo. 204, 10 P. 2d 970, cited in further support of the majority opinion, the court based its statements mainly on the Hudgins Case, above. In the Wyoming case it is shown that the Constitution of that state contained the following provision:

"Provided further, that any school district may be authorized to create an additional indebtedness, not exceeding 4 per centum on the assessed value of the taxable property therein as shown by the last preceding general assessment, for the purpose of the erection or enlargement of school buildings therein."

This provision was vitalized by an act whereby school boards were authorized to vote bonds for the purpose specifically set out in the Constitution, above, within the limit therein provided.

It was contended in that case that the funds derived from a bond issue should be limited to the construction of schoolhouses; that furniture could not be purchased by implied power. While the court did not fully determine the question, it was said that the power to erect the building would ordinarily include the power to equip.

But the question was determined in the later case of Jewett v. School Dist. No. 25 in Fremont County, 49 Wyo. 277, 54 P. 2d 546, cited in the majority opinion. It was there held that the above constitutional provision authorizing the erection or enlargement of a schoolhouse included the power to equip.

The Wyoming cases, above, are silent as to whether there are other legal methods whereby school districts may equip school buildings than by bond issue under the section of the Constitution quoted above. The laws of that state have been searched, and no such authority has been found in the statutes or the Constitution. That fact

alone would distinguish the cases from the present one, for, as stated before, it is conceded that other adequate methods of equipping public buildings exist in this state.

In the Louisiana case of Board of Directors, etc., v. Ruston State Bank, 133 La. 109, 62 So. 492, it was held that a constitutional provision authorizing the issuance of bonds for funds to erect buildings necessarily carried the authority to purchase the building site. The case merely follows the general rule that express powers carry with them all powers necessarily implied. The case does not disclose whether the Constitution authorizes the purchase of sites by other methods. And the Constitution and statutes of Louisiana seem not to contain express authority for raising funds for the purchase of building sites.

In Board of Commissioners, etc., v. C. N. Malone & Co., 179 N. C. 110, 101 S. E. 552, relied on by the majority opinion, it was held that the statutory power to "raise the means and erect a new building" for school purposes included the right to procure and pay for ordinary equipment. But it does not appear whether the laws of North Carolina contain any provision authorizing the purchase of equipment for school buildings.

In Midland Special School Dist., etc., v. Central Trust Co. of Illinois, 1 Fed. 2d C.C.A. 124, bonds were issued under a special act of the Arkansas Legislature authorizing indebtedness "for the erection, alteration or improvement of school buildings." The bonds on their face stated that they were issued for the purpose of equipping certain school buildings, and to refund existing indebtedness. The court held that the recital concerning equipment did not invalidate the bonds as being beyond the statutory authorization, saying that there was no contention that the bonds were in fact used for such purpose. It was further said that "the erection, alteration or improvement" of buildings would fairly include many things commonly called equipment. It was also

held that due to certain provisions in the statute the bonds were legal as funding bonds. The case cannot be said to be in point here.

In holding that only such equipment as will necessarily become a permanent part of newly constructed buildings can be purchased from the increased levy, the majority opinion invades the province of the Legislature. Conceding it to be a judicial question, the appeal does not present it and so all that is said with reference to it is dictum.