BOARD OF COUNTY COMMISSIONERS OF CANADIAN COUNTY, Oklahoma, Plaintiff in Error,

v.

STATE BOARD OF EQUALIZATION of the State OF OKLAHOMA, Defendant in Error.

No. 39321.

Supreme Court of Oklahoma.

June 13, 1961.

244

John V. Whelan, Jr., County Atty., Canadian County, J. A. Rinehart, Co-Counsel, El Reno, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., Fred Hansen, First Asst. Atty. Gen., L. G. Hyden, Asst. Atty. Gen., Albert Lynn, Gen. Counsel, Oklahoma Tax Commission, Ed Armstrong, Asst. Counsel, Oklahoma Tax Commission, Oklahoma City, for defendant in error.

Frank Carter and Otjen & Carter, Enid, for Oklahoma Farm Bureau, amicus curiae.

PER CURIAM.

This appeal from an order of the State Board of Equalization, hereinafter referred to as appellee, arose out of proceedings before said Board, dealing with complaints filed by Boards of County Commissioners of various counties in the State, against the appellee Board's previous order directing an increase of valuations for assessment of ad valorem taxes, in 63 of the State's 77 counties. The order referred to rural land and improvements as one class of property, and to urban land and improvements as another class. It required a 10% increase in valuations for the first class, and a 1.75% increase for the latter class. These ordered increases were in accord with findings made by the Oklahoma Tax Commission, under Title 68 O.S.1951 § 15.43, on the basis of a so-called "ratio study" said Commission had previously made in the various counties in the State.

The complaint involved herein is the one filed with the appellee Board by the Board of County Commissioners of Canadian County, hereinafter referred to as appellant. This complaint alleged, in substance, that the County Assessor of Canadian County had already assessed such property for the year 1960, in accord with the Oklahoma Constitution's Article X, section 8, as amended; that the increases ordered by the appellee Board are not in accord with said section, and said increases—by being different for urban, and rural property, respectively—raise the assessment of similar property, similarly used, by different amounts; and are thus discriminatory, and, not only do not equalize valuations in the several counties, but " * * * bring about an unequalized situation within Canadian County." The complaint further alleged:

" * * * 4. That the Order of said State Board of Equalization comes too late and was not made until after the assessment rolls of Canadian County had been made up and were no longer subject to correction or adjustment by the State Board.

"5. That said State Board by law met on the third Monday of June, 1960, but gave no notice of any increased assessment to the County Commissioners of Canadian County until August 5, 1960, some 45 days later. That under Statute such Order adjusting, correcting, or equalizing assessments should have been made long prior thereto.

"6. That an unusual situation does exist in Canadian County due to the location of greater Oklahoma City, same being a part of Canadian County, which by reason of the application of the State Equalization Board Order creates, a unique, unequalized, and discriminatory tax situation."

At the hearing before the appellee Board, it was shown, among other things, that the Oklahoma Tax Commission, in making its aforementioned "ratio study", arrived at its figures for the "fair cash value" of the two classes of property (urban and rural).

by considering conveyance records, along with tax assessment records, in the various counties; and, for the purpose of said study, classified all unplatted property outside of city, or town, limits, as "rural", and all other property as "urban."

After all evidence had been introduced, and arguments heard, the appellee Board, on September 1, 1960, entered the order herein appealed from, denying appellant's complaint, among others, and "finalizing" the valuation increases specified in its original order of August 3, 1960.

In its present appeal from the later order, appellant urges that the order violates the Oklahoma Constitution's Article X, section 5, requiring taxes to be uniform through the State's various counties on the same class of subjects. It contends, in substance, that the division, or classification, of property into rural and urban (as was therein done) can be no part of a proper method of equalizing taxes on the basis of value. At the oral argument before this court, it was further contended that the appellee Board is without power to equalize valuations within a county, and that its power is confined to equalizing them among, or between, counties. These contentions are determined against appellant by what this court said in Appeal of McNeal, 35 Okl. 17, 128 P. 285, 291, as follows:

"We have our attention called * *

* * * * * *

Also to the case of State ex rel. [Wyatt] v. Vaile, 122 Mo. 33, 26 S.W. 672, wherein the state board of equalization, by order, provided that in Jackson County the valuation of lands should be reduced 25 per cent and town lots 50 per cent. This it was held to be without power to do, for the reason that section 7514, Revised Statutes 1889 provided that the board shall equalize the valuation of the property "among the respective counties * *'.

"It is to be observed that this statute is dissimilar to the statute under consideration in this case * * *. Dis-

cussing this (Missouri) statute, the Supreme Court of Missouri says: 'The meaning of this statute, it seems to us, is clear. It gives the board power to equalize the value of property, real or personal, among the counties; but it gives that board no power to go into any county and equalize the value of parcels or classes of real estate therein. That is a matter confided by the law to the county board of equalization. The powers of the two boards are entirely different. The state board deals with the entire county assessment * * *, while the county board deals with individual assessments. The state board * * * has nothing to do with adjusting the values of different parcels of land in the same county. Inequalities between parcels of land or *classes* of land in the same county are matters within the exclusive jurisdiction of the county board. The state board has nothing to do with them.

"Just the power as to classes of property which the state board of equalization lacked in Missouri has been specifically conferred upon the state board of equalization of this state. The Missouri board found on an investigation that the lands of Jackson County had been assessed at 25 per cent. in excess of the amount which they should have been assessed, and that the town lots had been assessed 50 per cent. in excess of that amount, but it lacked the power to equalize and equitably adjust this difference. Therefore its action in endeavoring to do this was held void. The consequence was an injustice or inequality and lack of uniformity in the taxation of this property. *This was just the situation and defect which would exist in our law, except for the act here inveighed against;* and it was to correct the manifest certainty of inequality inherent in the administration of such a system that the Legislature of the state wisely provided and invested the

state board with the power to equalize between the valuation of classes of property, where the same was unequal. For instance, if the board should discover that in some county of this state the value of farm lands was placed at their fair cash value, and that the town lots had been assessed at but one-half of their fair cash value, it had the power, without disturbing the farm values, to raise the valuation of the town lots, and thus bring about uniformity in the burden of taxation between the owners of these two classes of property. * * *." (Emphasis ours.)

The language quoted by appellant from Custer County, Excise Board v. St. Louis-San Francisco Ry. Co., 201 Okl. 528, 207 P.2d 774, is not applicable here. There, this court was obviously referring to "rate of levy", rather than to valuation. In Blake v. Young, 128 Okl. 153, 261 P. 923, we held that the uniformity provision in the Oklahoma Constitution's Art. X, sec. 5, which appellant claims the challenged order violates, relates to the rate of taxation, and *not to the valuation of property*. See also Cooley on Taxation (4th Ed.) p. 638.

■ Under its second proposition for reversal, appellant contends that, since the order appealed from directed increased valuations in only 63 of the State's 77 counties, it cannot be characterized as " * * a bona fide attempt to equalize, correct and adjust taxes as between all of the counties, but, on the contrary, it was a plan, scheme and design to raise (only) a number of counties to what the Tax Commission, or the Board, conceived to be the proper raise * * *". Appellant concedes that great "latitude" is given the appellee Board in selecting the method it may think proper in carrying out tax equalization. But it charges that any scheme which omits 14 of the 77 counties is arbitrary, capricious, contrary to the intention of the statutes, and cannot be said to be based on true "ratio study". We find no merit in these arguments. For all that the record

shows, valuations in the 14 counties unaffected by the order had already been raised toward the constitutional limit of: not to exceed 35% of fair cash value; and apparently the Board considered it neither necessary nor advisable to increase them at this time. But, be that as it may, the standard should be applied without reference to whether it has been attained by one, or more, of the State's counties, or none of them. See 84 C.J.S. Taxation § 502. It was proper for the appellee Board to order an increase in valuations in those counties which did not measure up to the proper standard. Appeal of McNeal, supra.

■ Under its Proposition III, appellant contends that the rate, or percentage, of valuation increase, specified in the order for rural property, is not in accord with the ratio of its true value to that of urban property. Appellant seeks to demonstrate this by reference to portions of the evidence introduced before the Board to the effect that certain rural lands in the eastern part of Canadian County—near metropolitan Oklahoma City—have recently sold at speculative, or inflated prices—not because of their value as farm, or true "rural", property, but because of their present, or potential value, for urban, or industrial, development, or as "show places" for Oklahoma City businessmen.

At the oral argument, appellant conceded that neither of the two particular tracts mentioned in its brief, as having such inflated values, were included in the ratio study. Nor does examination of the "work sheets" on the Canadian County tracts used in the study support the argument in appellant's reply brief that, since 40 of the 75 tracts used are located in the two Ranges (5 and 6) nearest Oklahoma City, the study reflects fictitious and unreal values, rather than true farm, or rural, values in said County. When the figures appearing on the work sheets in their "maximum value less $250.00" column, for the 31 tracts in Range 5, are added, and the average value per tract is computed, the result is $11,877.41. When the same com-

putation is made as to the 9 tracts in Range 6, the result is an average such value per tract of $14,211.11. Yet, when the same computation is made with reference to the tracts in Range 8 (that were used for the ratio study) the average such value arrived at for those properties was the even higher figure of $15,437.50. By way of further refuting appellant's argument that use of eastern Canadian County tracts in the ratio study, prevented it from reflecting true rural values in the county as a whole, counsel for the Oklahoma Tax Commission pointed out, at the oral argument, that the study shows that those in the eastern Ranges were already assessed at a greater percentage of their actual cash value than those in two Ranges in the Western part of the County.

■ Appellant's Proposition IV is as follows:

"The order of the State Board of Equalization was not made in time to permit county assessors to make orderly compliance therewith under mandatory statutes, title 68 O.S.A.1951 sec. 15.55 and title 68, sec. 15.59 O.S.A. 1951, under statutes county Equalization Boards were then unable to afford any relief to taxpayer."

Under this Proposition, appellant points out that each of this State's county assessors is required, by Title 68 O.S.1951 § 15.55, under the penalty prescribed in Section 15.59 of the same title, to complete the tax rolls, and abstract thereof, for his county " * * * and deliver the same to the County Treasurer and County Clerk, respectively, on or before the 1st day of October of each year." It is contended that since the order, herein appealed from, was not entered until September 1, 1960, there was not sufficient time between that date and October 1st, to enable county assessors of the State to comply with it in an orderly manner, since many of them—on the date of said order—had already made up the tax rolls. The inference that the taxpayer has no relief from the levy of excessive taxes in accord with the order,

is predicated on the assumption that his only remedy is that prescribed by Title 68 O.S.1951 § 15.40 to be obtained from his county board of equalization. It is argued, in substance, that since said statute contemplates that such boards terminate their sessions "not later than the 1st Monday in June * * *", there can be no opportunity for obtaining relief at the hands of said board from an order like the one here involved, that is not entered until months later. We think appellee sufficiently answers these arguments by pointing out that the records of the Oklahoma Tax Commission reveal that all of the counties in which this order required valuation increases, have complied with it in an orderly manner; and that application of the provisions of Title 68 O.S.1951 § 15.48 will save taxpayers from any loss, or detriment, by reason of excessive taxation, under the order appealed from.

■ In the brief of Amicus Curiae, the contention was made, and adopted by appellant at the oral argument, that the portion of Sec. 15.44 of Title 68, requiring the appellee board's equalization of property valuations to conform to its fair cash value is contrary to our Constitution's Art. X, sec. 8, as amended by the special election held July 1st, 1958, which said amendment created a 35% of "fair cash value" limitation on such valuation. It is argued that this conflict renders all of Section 15.44 unconstitutional and void, as (it is argued or inferred) the Legislature would not have enacted any of said section, without including in it, some valuation limitation; and that this section being void, renders the dependent section 15.45 of the same Title also inoperative; and consequently the entire proceeding before the appellee Board, and all orders issuing out of it, are void. No Oklahoma case is cited by way of demonstrating that such argument is applicable to a situation like the present one, but, upon consideration of the tests to determine whether a constitutional limitation, or restriction, it self-executing (in this connection, see the quota-

tion from 12 C.J. 719 in Oklahoma County Excise Board v. Kurn, 189 Okl. 203, 115 P.2d 113, 115, and Williams v. City of Norman, 85 Okl. 230, 205 P. 144, 147, 148) and, in accord with our duty to uphold existing law when it may operate in aid of a constitution amendment (Linthicum v. School Dist. No. 4, 49 Okl. 48, 149 P. 898) and may be held to be amended by it (City of Tombstone v. Macia, 30 Ariz. 218, 245 P. 677, 682, 46 A.L.R. 828, 834; 11 Am.Jur., "Constitutional Law", sec. 36, Note 16) we hold that the recent amendment of Art. X, sec. 8, supra, does not repeal or nullify, but only amends one portion—the "fair cash value" provision—of the previously existing law.

As, in the arguments of the appellant, we have found no valid cause for reversing the order appealed from, the same is hereby affirmed.

■ Due to the exigencies related to the element of time affecting the situation involved herein, the usual 15-day period allowed by this Court's Rule No. 28, 12 O.S.A. c. 15, Appendix for the filing of petitions for rehearing generally, is, as applied to this case, reduced to 10 days.

WILLIAMS, C. J., BLACKBIRD, V. C. J., and WELCH, DAVISON, HALLEY, JOHNSON and BERRY, JJ., concur.

IRWIN, J., concurs specially.

JACKSON, J., dissents.

IRWIN, Justice (concurring specially).

Article X, Sec. 21, of the Constitution of Oklahoma provides that the duty of the State Board of Equalization shall be to adjust and equalize the valuation of real and personal property of the several counties of the State. Title 68 O.S.1951 § 15.43, provides that the Oklahoma Tax Commission shall render its findings as to the adjustment and equalization of the valuation of real and personal property of the several counties of the State and such findings shall be laid before the State Board of Equaliza-

tion as recommendations for its final action. Title 68 O.S.1951 § 15.44, provides that the State Board of Equalization shall hold a session commencing on the third Monday in June of each year for the purpose of equalizing the property of the several counties and it shall be the duty of the Board to equalize, correct and adjust the same as between the several counties and of the several counties.

The Oklahoma Tax Commission conducted a study, made findings and submitted its recommendations to the State Board of Equalization. The study was based on certain sales and transactions as compared with the assessed valuations and from this study the Tax Commission ascertained the average state-wide valuation of urban and rural property. The State Board of Equalization based its order on the recommendations of the Tax Commission.

It has not been seriously contended that inequalities in valuations did not exist within some counties and between the several counties for many years. And, in my judgment, the evidence is sufficient to establish that the "ratio study" made and prepared by the Oklahoma Tax Commission and submitted to the State Board of Equalization, if not entirely correct, is substantially correct, and that the same was a proper yardstick upon which the State Board of Equalization could act.

The record fails to disclose that any previous order, similar or comparable to the order appealed from, has ever been rendered by the State Board of Equalization. Therefore, in my judgment, if inequalities in valuations do exist within some of the counties and between the several counties, the seeds for such inequalities were not planted nor did they sprout within a year prior to the time the "ratio study" was commenced. The seeds for such inequalities were planted shortly after statehood, nurtured for a few years and sprouted many years ago.

In my judgment, the Legislature, the Tax Commission, and the State Board of Equal-

ization recognized that inequalities within some counties and between the several counties existed. The State Senate and the House of Representatives, by separate Resolutions, stated that "It has been frequently reported that gross inequities exist in the assessment of real and personal property as between the various counties of Oklahoma as well as within the counties." In the Resolutions, the State Board of Equalization was requested and directed to inquire into the valuation and to make adjustments and equalizations thereof. However, it must be noted, the separate Resolutions enacted by the State Senate and House of Representatives did not *direct* the State Board of Equalization to equalize the valuations for the fiscal year 1959–60, but merely requested such be done. In my judgment, the Legislature recognized that inequalities of valuation had come about over a period of years and that an adjustment and correction thereof should be brought about over a period of years.

The Oklahoma Tax Commission found and stated that to adjust all counties to the average ratio would require an increase in some counties as much as 75% and that "to attempt an immediate increase of the value of any county in this State by 75% per year, would create an undue hardship upon all concerned and in order to accomplish an orderly transition", recommended that no valuation should be increased more than 10%. The State Board of Equalization followed these recommendations.

In my judgment, inequalities in valuations existed within some counties and between the several counties for many years before the State Board of Equalization rendered its order. And in my judgment, the Order does not adjust and correct the inequalities as it is apparent inequalities still exist. However, the Order of the State Board of Equalization did remove some of the inequalities and is a step toward granting to all the taxpayers their right to have their property assessed equally and uniformly with the property of every other taxpayer.

The question then arises: "Where the Constitution and the statutes provide that the State Board of Equalization shall adjust and equalize the valuations, is an order which only tends to adjust and equalize valuations valid?"

The Tax Commission found in substance that to completely adjust and equalize the valuations in a single order or in any one year, "would create an undue hardship on all concerned." In my judgment, where a rigid interpretation of the Constitution and our statutory provisions would create an undue hardship on the peoples of our State, which in effect would threaten the public welfare, then we should, without hesitation, apply a reasonable and practical interpretation in accord with common sense.

In my judgment, a reasonable and practical interpretation of our Constitution and statutory provision authorizes and empowers the State Board of Equalization to render the Order appealed from. I therefore concur specially in the opinion promulgated by a majority of my associates.

I am authorized to state that DAVISON, J., concurs in the views herein expressed.