The **BOARD OF EDUCATION OF INDE-PENDENT SCHOOL DISTRICT 20, MUSKOGEE COUNTY, OKLAHOMA, et al., Plaintiffs,**

v.

**STATE OF OKLAHOMA et al., Defendants,**

and

**Board of Education of Independent School District 1, Sulphur, Oklahoma et al., Intervenors.**

**No. 68–99 Civ.**

United States District Court
W. D. Oklahoma.

July 17, 1968.

Maurice H. Merrill, Norman, Okl., Tom Mason of Bonds, Matthews & Mason, Chal Wheeler of Norman & Wheeler, E. M. Guillory, Asst. Dist. Atty., Muskogee, Okl., for plaintiffs.

Brian Upp, Asst. Atty. Gen., for G. T. Blankenship, State Atty. Gen., Oklahoma City, Okl., N. A. Gibson, Commissioners of Land Office, Oklahoma City, Okl., for defendants.

Bert Barefoot, Jr., Edward H. Moler and John A. Claro, Oklahoma City, Okl., S. M. Fallis, Dist. Atty., Tulsa, Okl., Curtis P. Harris, Dist. Atty., Oklahoma City, Okl., C. H. Rosenstein of Rosenstein, Livingston, Fist & Ringold, Tulsa, Okl., for intervenors.

## OPINION

BOHANON, District Judge.

This action is brought here by the plaintiffs, THE BOARD OF EDUCATION OF INDEPENDENT SCHOOL DISTRICT 20, Muskogee, Oklahoma; NATALIE SAMS and F. CLARENCE SAMS, minors who sue by their parents, Mr. and Mrs. Nathan Sams, MR. and MRS. NATHAN SAMS, individually; THOMAS BUCKLEY, ROBERT BUCKLEY, and JOHN BUCKLEY, minors who sue by their parents Mr. and Mrs. William A. Buckley and MR. and MRS. WILLIAM A. BUCKLEY, individually; JENNIFER PARKER, a minor who sues by her parents Mr. and Mrs. Kenneth Parker and MR. and MRS. KENNETH PARKER, individually; and the class of all those school districts, school children, parents and property owners in the State of Oklahoma who are similarly situated with the above named plaintiffs, against the defendants, STATE OF OKLAHOMA; STATE OF OKLAHOMA ex rel. The COMMISSIONERS OF THE LAND OFFICE; JACK BLACKWELL, the County Treasurer of Oklahoma County; JIM PARKINSON, the County Treasurer of Tulsa County; and OSCAR THOMAS, the County Treasurer of Muskogee County, in their official capacities and representing the class of all County Treasurers of Oklahoma.

The action is brought here and the jurisdiction of this Court is asserted under 28 U.S.C. Section 1343, plaintiffs alleging that the cause arises under the Constitution of the United States, the Fourteenth Amendment thereof, requiring that all persons shall be guaranteed equal protection of the laws.

In 1913, by referendum election, the Constitution of the State of Oklahoma was amended by adding to it Section 12a of Article X, which provides as follows:

"All taxes collected for the maintenance of the common schools of this State, and which are levied upon the property of any railroad company, pipe line company, telegraph company, or upon the property of any public service corporation which operates in more than one county in this State, shall be paid into the Common School Fund and distributed as are other Common School Funds of this State."

It is alleged, and not denied, that the taxes collected upon the properties mentioned in the Constitutional Amendment, supra, have not been paid into the Common School Fund and distributed as are other Common School Funds of the State, and that the failure to distribute the funds, as provided by said Constitutional Amendment deprives the plaintiffs of equal protection of the law as guaranteed by the Fourteenth Amendment, and has caused discrimination against the plaintiffs in that it has deprived the plaintiff school children of an equal opportunity for education in that the Common School Fund does not receive the ad valorem taxes collected as contemplated by the Constitutional Amendment, supra; it is further alleged that the plaintiff parents and tax payers are deprived of equal protection and suffer discrimination in that their children are denied an equal opportunity of education and that they are required to pay more taxes to provide for local financial support for their school district because the Common School Fund is deprived of the taxes on such properties, while at the same time the parents and tax payers of local school districts containing a concentration of such properties are required to pay much less school ad valorem tax because they have the benefit of all the school ad valorem taxes on the concentrations of public utility properties. It is further alleged that the intent of Article X,

Section 12(a) of the Constitution is to assure that school children, tax payers, and school districts throughout the state share, under the equalization formula, the taxes collected for the maintenance of the common schools on the properties of such utilities.

Plaintiffs seek the following relief:

(a) To enjoin defendant County Treasurers and all of their class from paying any taxes collected for maintenance of the common schools on properties of all railroad, pipeline, telegraph and other public service companies which operate in more than one county, to local school districts until further order of the Court;

(b) Directing the State Legislature to enact legislation within a stated period of time, to implement and activate the provisions of Article X, Section 12(a) of the Oklahoma Constitution;

(c) In the event the Oklahoma Legislature fails to obey the decree of this Court, then this Court should mandatorily enjoin and order the defendant County Treasurers and all of their class to forthwith and henceforth pay all such taxes collected to the Common School Fund; and

(d) Ordering the Commissioners of the Land Office of Oklahoma to receive the taxes so collected and apportion and distribute the same throughout the state as other Common School Funds.

The State of Oklahoma asserted its sovereignty and immunity from suit, and upon motion was dropped as a party defendant.

Upon application, and by leave of Court, the following school districts were permitted to intervene, to wit:

Board of Education of Independent School District 1, Sulphur, Oklahoma; Board of Education of Independent School District 2, Mooreland, Oklahoma; Board of Education of Independent School District 3, Fort Gibson, Oklahoma; Board of Education of Independent School District 4,

Konawa, Oklahoma; Board of Education of Independent School District 4, Oologah, Oklahoma; Board of Education of Independent School District 7, Harrah, Oklahoma; Board of Education of Independent School District 16, Byng (Ada) Oklahoma; Board of Education of Independent School District 31, Weleetka, Oklahoma; Board of Education of Independent School District 69, Mustang, Oklahoma; Board of Education of Independent School District 1, Laverne, Oklahoma; Board of Education of Independent School District 23, Hooker, Oklahoma; Board of Education of Independent School District 5, Wetumka, Oklahoma; Board of Education of Independent School District 39, Gage, Oklahoma; Board of Education of Independent School District 4, Buffalo, Oklahoma; and Board of Education of Independent School District 1, Tulsa County, Oklahoma.

After the filing of the original Complaint and on May 14, 1968, plaintiffs filed an Application requesting the Court to convene a three-judge court pursuant to 28 U.S.C. 2281 et seq., to hear and determine this cause.

Independent School District No. 1 of Tulsa County, Oklahoma, has filed a Motion to Dismiss for two reasons:

(a) The Court lacks jurisdiction over the subject matter of this action, and

(b) The Complaint fails to state a claim upon which relief can be granted.

The remaining intervenors filed a Motion to Dismiss upon the ground that the Complaint fails to state a cause of action and alleged insufficient grounds upon which relief may be granted.

█ It is fundamental that courts at all and at every stage of a proceeding are required to look into their own jurisdiction. Sunray DX Oil Company v. Federal Power Commission, 351 F.2d 395 (10 C.A.1965).

Does this Court have jurisdiction of the alleged claim set forth in the Complaint whether composed of one judge or three?

The Complaint alleges this Court has jurisdiction, under Sec. 1343. It is quite obvious from a reading of this section that the jurisdiction of this Court must be found, if at all, in paragraph (3) of Section 1343, which reads:

"(3) to redress the deprivation, under color of any State law, statute, ordinance, regulation, custom or usage, of any right, privilege or immunity secured by the Constitution of the United States or by any Act of Congress providing for equal rights of citizens or of all persons within the jurisdiction of the United States;"

The Complaint in this case alleges that the Constitutional rights of plaintiffs have been denied because of the failure of the Oklahoma Legislature to adopt enabling legislation making effective Section 12a of Article X. No attempt is made, nor is there any allegation, that any of the Constitutional or Statutory provisions of the State of Oklahoma are invalid, nor is there any attack upon any statute of the State of Oklahoma. As a matter of fact, plaintiffs assert the validity of Section 12a of Article X, Oklahoma Constitution, but complain because the Legislature of the State of Oklahoma has not taken action to implement said Constitutional Amendment.

In paragraph 5 of the Complaint, it is alleged that in 1915 the Supreme Court of the State of Oklahoma in the case of Linthicum v. School Dist. No. 4 of Choctaw County, 49 Okl. 48, 149 P. 898, ruled that Article X, Section 12a of the Oklahoma Constitution was not self executing but required legislation to implement and activate its provisions, and that until such legislation was enacted, the County Treasurer of Choctaw County could not pay to the Common School Fund the taxes collected under ad valorem tax levies for local school districts.

This case stands as the law of Oklahoma, as announced by the Supreme Court of the State of Oklahoma.

The opinion of the Supreme Court of Oklahoma in the Linthicum case reveals Section 12a Article X of the Oklahoma Constitution not to be applicable to taxes levied by school districts for the support of the common schools of a particular district. And in said opinion points out that at the time of the adoption of Section 12a Article X pursuant to the power conferred by Section 3 of Article XI, the Legislature was authorized to levy ad valorem taxes on all taxable property in the State, and that the Legislature had authorized the levy of an ad valorem tax of ¼ of one mill on all property within the State for the aid of common schools; that in addition thereto, pursuant to Section 9 of Article X of the Oklahoma Constitution, the Legislature had authorized the levy of an ad valorem tax of not to exceed one mill upon all taxable property in each county for "the aid of common schools of the county," and that the Legislature had also provided for the school districts of the State a uniform system of government invested with the power to levy taxes for school district purposes to supplement the funds and efforts of the State. Depending upon the needs of the school district, taxes were authorized to be levied as disclosed by an estimate of needs which each school district was required to file with the County Excise Board of the county in which the school district was located. If the estimate of needs disclosed that a particular school district could not finance its needs by a levy of five mills, the levy could be increased by a vote of the electors of the school district. Speaking of the taxes last referred to (school district five mills plus any additional millage voted by the electors of the particular school district), the Supreme Court said:

"Obviously, the taxes involved herein were collected solely for school district purposes, and not for the maintenance of the common schools of the state; and they were levied, not 'upon the property of any public service corporations,' but upon all the taxable property situated in the school district. Section 12(a) does not in terms purport to provide for the assessment, levy, or collection of a tax, but directs how taxes collected for the maintenance of the common schools of the state which are levied upon [the property of certain specified companies or corporations] may be distributed when collected, evidently assuming either that there was a law in existence at the time of its adoption which provided for the levy and collection of such a tax, or that some subsequent Legislature would supply the omission. As we are unable to find any existing law providing for the assessment, levy, or collection of such a tax, we are forced to the conclusion that the duty of vitalizing Section 12(a) was left for some future Legislature."

■ Generally speaking, a Federal Court is required to take judicial notice of the laws of any state, statutory and those declared by the highest court of the state. See Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188; Parker v. Parker, 82 F.2d 575 (10th Cir.).

No case has been cited to this Court, and independent research has revealed none wherein a Federal Court has assumed jurisdiction to direct the State, or its officials, or its Legislature, the manner of distribution of taxes collected by the State, or any subdivision of the State.

■ The Complaint in this case asks this Court to direct the State Legislature and other officials of the State, by mandatory injunction, to pursue a certain method of distribution of school district tax receipts. The Court can find no authority for taking any such drastic action, and refuses to do so.

Section 1343(3) of Title 28 U.S.C. does not give this Court jurisdiction of an action compelling a certain method of distribution of tax collections. The rights which plaintiffs seek in this case are monetary rights and not rights involving personal liberty. The Court finds nowhere in the Federal Constitu-

tion, and particularly under the due process clause or the equal protection clause which requires any particular segment of the State to be allocated any particular portion of the tax receipts of the State, or any subdivision thereof, and there is no Federal Constitutional question involved.

Plaintiffs have used a considerable portion of their brief attacking the Linthicum case as not actually stating the law. This case stands today as it did in 1915. If plaintiffs consider that the Supreme Court of Oklahoma did not properly decide the effect of Section 12a of the Constitution in the Linthicum case, then the Courts of the State of Oklahoma are open to them to seek a reexamination of this case, its redetermination of the question, and seek the relief sought here in the State Courts, which is available and adequate.

Although not legally and officially a part of the record in this case, but attached to and made a part of intervenor's brief, is an opinion of the Attorney General of the State of Oklahoma dated July 18, 1967.[1] The Attorney General

1. "Honorable Lonnie L. Abbott
State Representative
Ponotoc County
Ada, Oklahoma

Opinion No. 67–308

Dear Sir:
The Attorney General is in receipt of your letter of June 14, 1967, wherein you ask the following questions:
'1. Has Article 10, Section 12a of the Constitution been vitalized?
'2. Has Article 10, Section 12a of the Constitution been nullified by other constitutional amendments?
'3. Does Article 10, Section 12a of the Constitution have to be vitalized before it can be put into force and effect?
Article 10 Section 12a of the Oklahoma Constitution provides as follows: 'All taxes collected for the maintenance of the common schools of this State, and which are levied upon the property of any railroad company, pipe line company, telegraph company, or upon the property of any public service corporation which operates in more than one county in this State, shall be paid into the Common School Fund and distributed as are other Common School Funds of this State.'
The Above provision of the Constitution of Oklahoma was considered by the Supreme Court of Oklahoma in the case of Linthicum, County Treasurer v. School District No. 4, Choctaw County, 49 Okl. 48, 149 P. 898, where the first syllabus by the court held:
'The amendment to the constitution, adopted at an election held on August 5, 1913, known as Section 12a of Article 10 * * * is not self-executing by itself on express terms; nor can it be given effect by the aid of any constitutional provision or legislative enactment enforced at the time of its adoption.'
And in the body of the opinion the Court said,
'Section 12a injects such a new, if not discordant, element into the system of taxation for common school purposes, formerly designed by the Constitution and the legislation enacted for the purpose of vitalizing its provisions, that it is impossible to conclude that the people in adopting said section 12a intended it to go into effect without the aid of additional legislation.'
It is therefore the opinion of the Attorney General that your first question be answered in the negative and your third question be answered in the affirmative. Article 10 Section 12a of the constitution has not been vitalized by the legislature and must be so vitalized before the same can be put into force and effect.
In consideration of your second question we have examined several other provisions of the Constitution of Oklahoma and particularly Article 10 Section 12 and Article 10 Section 9. Article 10 Section 9 has been amended on several occasions and now provides:
'* * * the total taxes for all purposes on an ad valorem basis shall not exceed, in any taxable year, fifteen (15) mills on the dollar, no less

of the State of Oklahoma is the highest legal officer of the State, and his opinion should be given due force and effect, until and unless overturned by a State Court of competent jurisdiction.

In conclusion, and based upon what has heretofore been stated in this opinion, this is not a case calling for a three-judge court inasmuch as no statute or an order of an administrative board or commission is challenged as contrary to the Constitution. See Ex parte Williams, Tax Commissioner, 277 U.S. 267, 48 S.Ct. 523, 72 L.Ed. 877; Oklahoma Natural Gas Company v. Russell, 261 U.S. 290, 43 S.Ct. 353, 67 L.Ed. 659.

Quite aside from the doctrine of abstention which the Court feels would otherwise be applicable in this case, based upon what has heretofore been said, and the allegations of the Complaint, this Court has no jurisdiction.

An appropriate Order will be filed sustaining Motions to Dismiss the Cause of Action and the Complaint, for lack of jurisdiction.

than five (5) mills of which is hereby apportioned for school district purposes, * * *. No ad valorem tax shall be levied for State purposes, nor shall any part of the proceeds of any ad valorem tax levy upon any kind of property in this State be used for State purposes. * * * A tax of four (4) mills on the dollar valuation of all taxable property in the county shall be levied annually in each county of the State for school purposes, * * *. Upon certification of a need therefor by the board of education of any school district on additional tax of not to exceed fifteen (15) mills on the dollar valuation of all taxable property in the district shall be levied for the benefit of the schools of such district. * * * In addition to the levies hereinbefore authorized, any school district may make an emergency levy for the benefit of the schools of such district, in an amount not to exceed five (5) mills on the dollar valuation of the taxable property in such district when approved by a majority of the electors of the district * * *. In addition to the levies hereinbefore authorized, any school district may make a local support levy for the benefit of the schools of such district, in an amount not to exceed ten (10) mills on the dollar valuation of the taxable property in such district, when approved by a majority of the ad valorem taxpaying voters * * *.'

It would appear from the above-quoted provision that the people of the State have adopted an entirely different means of financing the common schools of the State than that method set out in Section 12a supra. It is, therefore, the opinion of the Attorney General that your second question be answered in the affirmative.

Very truly yours,
FOR THE ATTORNEY GENERAL
W. J. MONROE
First Assistant Attorney General"