BOARD OF COUNTY COMMISSIONERS OF OSAGE COUNTY, Oklahoma, Plaintiff in Error,

v.

STATE BOARD OF EQUALIZATION of the State of Oklahoma, Defendant in Error.

No. 39426.

Supreme Court of Oklahoma.

July 5, 1961.

Patrick A. Williams, Pawhuska, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., Fred Hansen, First Asst. Atty. Gen., L. G. Hyden, Asst. Atty. Gen., Albert D. Lynn, Gen. Counsel, Oklahoma Tax Commission, Ed Armstrong, Asst. Counsel, Oklahoma Tax Commission, Oklahoma City, for defendant in error.

Frank Carter, Enid, of counsel, Otjen & Carter, Enid, for Oklahoma Farm Bureau, amici curiae.

PER CURIAM.

This is another appeal from the same Order of the State Board of Equalization, and is based upon the same record as Board of County Com'rs v. State Board of Eq., Okl., 363 P.2d 242; Board of County Com'rs v. State Board, etc., Okl., 363 P.2d 263; Board of County Com'rs v. State Board, Okl., 363 P.2d 250; Sasseen v. State Board, etc., Okl., 363 P.2d 252; In re Carter County,

Okl., 363 P.2d 254; Board of County Com'rs v. State Board, Okl., 363 P.2d 256; Board of County Com'rs v. State Board, Okl., 363 P.2d 257; Board of County Com'rs v. State Board, Okl., 363 P.2d 259, in which separate opinions were promulgated by this Court, on June 14, 1961.

From the "Ratio Study" conducted by the Oklahoma Tax Commission (hereinafter referred to merely by the initials "O. T. C.") which formed the basis of its recommendations to said Board for tax valuation increases in the majority of the State's 77 counties, it was determined, among other things, that the average assessed value of urban property for ad valorem taxes in Osage County, in the year 1959, was 25.70% of its actual value, and that such assessed value of rural property in said County, the same year, was only 18.17%. The Board's order required no change in said County's urban valuations, but directed an increase of 10% in its rural valuations.

■ Here, as in Cause No. 39337, supra, plaintiff in error, hereinafter referred to as "Appellant", urges for reversal of the Order, under its Proposition II, that the Board's division of property in the County into two classifications, viz., urban and rural, and ordering an increase in valuations for the rural property, violates the requirement in Art. X, section 5, of the Oklahoma Constitution, that: "Taxes shall be uniform upon the same class of subjects." In the cited case, ("E. N. Sasseen, County Attorney of Washita County, etc. v. State Board of Equalization") valuations in Washita County—after being increased in compliance with the order appealed from —amounted, as those involved here, to a smaller percentage of actual values than the limit of 35% fixed by said Constitution's Art. X, section 8, as amended. There, we held that the order was not unconstitutional, in the respect here complained of, and the principles forming the basis of the first two paragraphs of the syllabus in that case are adopted herein as dispositive of appellant's Proposition II.

■ Appellant's Proposition III is as follows:

"That the Oklahoma State Board of Equalization was guilty of bad faith in ordering an increased assessment of rural property in Osage County, in that it had earlier furnished the Osage County Assessor written documents stating that no increase would be forthcoming for said County; that by reason thereof, said Board is estopped from making such an order of increase."

The "written documents" referred to in the above Proposition consist of a written "statement" adopted by the State Board of Equalization (hereinafter referred to as "Appellee", the "Board", or the "Appellee Board") on March 22, 1960, and thereafter distributed, with an attached report by R. H. Emans, Director of the Finance Division of the State Board of Education, dated January 29, 1960. The "statement" might be termed an announcement of policy. It stated, among other things:

"* * * It is agreed that the principal object of public tax expense is. education—the Public Schools, and institutions of Higher learning—and county valuations are directly related *only to Public Schools*. The statewide cost of these schools is going up, each year, to the 'tune' of millions of dollars; and it is apparent that several counties are low in providing for these schools, leaving the bulk of furnishing the increasing burden to rest upon the State—already over-burdened as it is, with expenses of general State needs. * * *." (Emphasis ours.)

After reciting certain facts pointing to the need, and task, of raising additional revenue to finance public schools, the "statement" further said:

"This all adds up to the somber fact that Public School costs are going up at the rate of many millions of dollars each year; while it is obvious that counties are not collecting or furnish-

ing (from local S. D. taxes) anywhere near the equivalent of their proper share of the added costs.

"In other words, it is obvious, that local school districts, even tho' levying the high limit, are not 'carrying their end of the log'; and this may be (as to some of the counties at least) because of unusually low property valuations.

"It is here noted that both the Senate and House (in the 1959 session) registered their collective notice of this critical problem by each body passing a resolution (S.R. No. 75, and H.R. No. 577) *calling upon the State Board of Equalization* ' * * * to equalize valuations of taxable real and personal property in order that local taxing units shall be more equally assessed * * *." (Emphasis ours.)

The "statement" included a copy of a resolution the appellee Board had theretofore passed, in which, among other things, it referred to the "ratio study" it had, in July, 1959, requested the O. T. C. to make; and it urged "the various county assessors and County Boards of Equalization to consider * * *" said study " * * * and where proper * * * take remedial action on the county level for the alleviation of the inequities shown by the ratio study to exist as between counties." Said statement did not, in itself, show the results of the O.T.C.'s ratio study, but Mr. Emans' aforementioned report, attached thereto, indicated that said study had shown that the average of all assessed property valuations in the State in 1959, was 22.07% of said property's actual cash value; and said report, in one column, opposite the name of each county of the State, listed the percentage figure representing the ratio that the O. T. C. had found its properties' assessed value bore to its actual cash value. One of the Emans', or Education Board's, report's other columns set forth the value of the real estate in the School Districts of each county, that received State Aid during 1959, and, in another of its columns it set

forth the percentage that the value of such property in each county would need to be raised to make it equal the above-mentioned 22.07% statewide average. As to Osage County, the report set forth the ratio study's figure of 23.65% as the ratio of all of its property's assessed value (both urban and rural) to said property's actual cash value; and left blanks opposite Osage County's name in the three columns entitled: "% Raise Required to Equal 22.07"; "Amount of Increase in Net Real Estate Val. in State Aided Schools"; and "Amt. Increase in the M. P. I. Calculated on 15 Mills Net", respectively.

We find in the above-described "statement", as a whole, no basis for appellant's claim that the appellee Board was estopped, after distributing said statement to Osage County's Assessor (and other County Assessors over the State) from requiring, by the order appealed from, a 10% increase in said county's rural property valuations. The indication in the State Board of Education's report that no increase in Osage County's valuations would be necessary, to make it equal the State's average ratio, did not commit the appellee Board against ordering the 10% increase here involved. Nor do we think the circumstances established bad faith on the part of the latter Board. The only commitment, or representation it made, as to its future action, was contained in the last paragraph of said "statement" proper, as follows:

"This Board, acting under the authority of and pursuant to the Legislative directive contained in House Resolution No. 577, and Senate Resolution No. 75, of the 27th (1959) Session of the Oklahoma Legislature, in response to the duties placed upon said Board by the Constitutional and statutory provisions above cited, and in consideration of the ratio study, hereinabove mentioned, does hereby express the intent of the Board to work toward the adjustment—equalization of the valuation of the property of the several counties for the year 1960."

Also, we held in "The Board of County Commissioners, Ottawa County, State of Oklahoma v. The State Board of Equalization of the State of Oklahoma", Cause No. 39324, supra:

"The fact that, under the order, rural property in one county will have an assessed valuation, greater in comparison with its fair cash value, than the average of the assessed valuations in other counties of the State, does not render said order [invalid] as in violation of the uniformity provision of the Oklahoma Constitution's Article X, section 5, as long as the increased valuations are within the limit fixed by section 8 of said Article, as amended."

 Under Appellant's Proposition I, it attacks the O. T. C.'s ratio study and the methods used in making it. The evidence shows that 124 different parcels of real estate in Osage County were considered in making this study; that a so-called "work sheet" was made on each parcel, showing its assessed value, as well as the cash consideration recited in the deed of its conveyance, and the total value of the federal internal revenue stamps appearing thereon. Each work sheet also had a blank to be filled in with the amount of any mortgage, constituting a portion of the consideration for the conveyance.

Appellant first represents Mr. Leininger, Vice-Chairman of the O. T. C., as having testified, " * * * as did all other witnesses from that agency, that the sole factor used in arriving at the value * * *" of the properties included in the study, were the revenue stamps on their deeds. We do not so interpret the testimony. The only part of the record cited to support the charge is the following excerpt from Mr. Leininger's direct examination by Mr. Graham, County Attorney of Washington County:

"Q. It's (the ratio study) based purely and simply upon the revenue stamps or the recited fair cash consideration. A. Actual consideration as shown. * * *."

The testimony of Miss Willie Rae Dotson, Assistant Director of the Ad Valorem Tax Division of the O. T. C. was, in substance, that the considerations recited in the deeds were a cognizable factor in determining the actual cash value of the property described therein. We have studied the instructions under which the O. T. C.'s field men made the work sheets for the ratio study, and are of the opinion that it would be difficult to devise a practical and expeditious method of ascertaining the fair cash value, in a study like the one involved, any more accurate than the one employed.

But, appellant charges that one of these instructions was not always followed. The one cited is the 6th of the "General Instructions", reading, in part, as follows:

" * * * The field men shall not mutilate or destroy any take-off sheet containing data collected pursuant to Subdivision A of these instructions, even though it is apparent that the transaction involved cannot be used in the ratio study. * * *."

In support of its charge, appellant quotes excerpts from the testimony of the Osage County Assessor and H. M. Sweeney, one of the O. T. C.'s "Field Men" referring to real estate found to be assessed at as much, or more, than the amount of the consideration shown on the County Clerk's records (as, for example, vacant lots deeded, but later improved, before being assessed). This testimony is to the effect that such parcels were excluded from consideration in the ratio study, and that the data obtained on take-off, or work, sheets about them, was discarded in what appellant characterizes as a violation of the above-quoted instruction. Its counsel says this practice " * * * deprived appellant of making an intelligent inquiry into the validity * * *" of the conclusions the O. T. C. arrived at in the study. We do not agree. Appellant's counsel points out that the Osage County Assessor was fully aware of the ratio study at the time it was being made; that he was furnished with a copy of the O. T. C. computations from it

in December, 1959, before assessment time in 1960, and long before the hearing of this case; that the work sheets on all of the 124 properties used in the study were introduced into the evidence of this case; and, that appellant's counsel had copies thereof for examination and study, and also had access to Osage County records, by which to verify them. The record herein demonstrates no merit in appellant's charge that it was deprived of an opportunity to thoroughly investigate, and show error in, the ratio study.

Counsel for appellee says, with abundant support from the testimony, that even if take-offs, or data compiled, as to properties, whose cash value was not fairly reflected by county records, had not been discarded, they could not have been expected to have been used by the O. T. C. in making its computations and calculations and formulating its conclusions from the ratio study. As pointed out by appellant, Miss Dotson testified, in part, as follows:

"Q. Now, Miss Dotson, it is my understanding that in regard to these tear sheets or work sheets that were used by your survey team that you've adopted—not only you personally but the Tax Commission adopted—a procedure that you referred to as the obvious error doctrine, is that right in deciding which of these to discard and which to keep? A. Well, if we felt something so completely out of line that it would lower the ratios too much or something like that.

"Q. Well, for example, say if you had a piece of property that the stamps would indicate it was worth $5,000.00 and it was assessed to maybe $50.00, why, you would throw that out, wouldn't you? A. Yes, we did; we discarded that. * * *."

Subsequent to the above testimony, counsel for appellant confronted the same witness with a work sheet on a parcel of real estate that was used in the ratio study. It reflected as great a difference between the assessed value of the property described

therein, and said property's actual cash value, as the example described above. Counsel obtained from Miss Dotson an admission that this property should not have been used in the study, and that its work sheet should have been excluded from consideration. He went on to obtain from said witness the further admission that the O. T. C.'s policy of excluding such work sheets may not have been followed consistently. Counsel for the appellee board seems to concede that there were some inaccuracies in the information used in the ratio study, but they demonstrate that, assuming this one work sheet was the only one opposing counsel could discover, out of the 124 used, that had such a wide discrepancy between assessed value and actual value, its exclusion would change the ratio of assessed valuations, to actual cash values, in Osage County, no more than $\frac{1}{10}$th of 1%. They also cite eleven instances in which parcels of real estate in said county were assessed at an average of 58.26% of their actual cash value, and say that these more than off-set, in final result, the few instances in which property was assessed at an extremely low percentage of its actual value. Counsel for appellant has made no convincing attempt to show that some extremely low assessed valuations in Osage County were not sufficiently counterbalanced by other extremely high ones, to prevent the ratio study from being materially inaccurate, unfair or prejudicial to appellant.

Nor do we find that the evidence concerning the reduction, from the year 1959, to the year 1960, in the total valuation of rural property in Osage County, brought about by annexations of the City of Tulsa, and condemnations for federal projects, such as the Keystone Dam (which is discussed in several pages of appellant's brief) has any bearing on the ratio of the assessed value of the said county's rural property to its actual cash value, or has any relevancy to the ratio study's accuracy, or to the issues in this case.

As we have found in the arguments presented by appellant, no justiciable cause for

**512**

reversing the order appealed from, said order is hereby affirmed; and the period for the filing of a petition for rehearing herein is limited to 10 days from the date this opinion is filed.

WILLIAMS, C. J., and WELCH, DAVISON, HALLEY, JOHNSON and BERRY, JJ., concur.

IRWIN, J., concurs specially.

JACKSON, J., dissents.

IRWIN, Justice (concurring specially).

I concur specially for the reasons set forth in Board of County Commissioners of Canadian County, Oklahoma, v. State Board of Equalization, Okl. 363 P.2d 242.